Owen McGivern, J.
In this nonjury action, the plaintiff, the remaining partner of a partnership called the Hamilton Company, seeks an accounting from his quondam partner, Sidney Goldman, and also from the latter’s wife and two other defendants, all of whom, in concert, formed the Hamilton Tile Corporation.
From the evidence developed at the trial, it became manifest that the plaintiff Rosner and Ms wife, together with the defendants Goldman (husband and wife) formed the subject partnership, the Hamilton Company, on August 2, 1955. The purpose of the venture was the importation of plumbing supplies and other related merchandise, such a-s tile, into the United States for sale; the partners were to contribute money, share profits, and, upon dissolution, receive a return of the capital and divide the resultant profits. Contemporaneously, there was formed by the same principals the Hamilton Tile Corporation, a vehicle never subsequently used by them.
In the conduct of the Hamilton Company, the parties had occasion to factor their imports, principally tile, through the *590 Stratford Factors, a local commercial financing unit. The practice was for the latter to advance the necessary moneys for the purchase of the foreign goods, pending the arrangements for their sale in this country. Upon the arrival of the goods in this country, it was anticipated that the Hamilton Company would make good to the Stratford Factors so that the latter might release the shipping documents covering the merchandise contracted for by customers of the Hamilton Company.
With indifferent success, the partnership struggled along until April of 1956, when the early beauty of the partners’ friendship began to fade. Hot words ensued, if not altercations, and then on May 10, 1956 the defendants Goldman, together with the defendants Weisberg (also husband and wife, the latter a sister of Mrs. Goldman) surreptitiously formed the Hamilton Tile Corporation for the purpose of importing and selling tile and other products in this country. The plaintiff contends that these defendants clandestinely formed this rival corporation in order to take advantage of the prospects already developed by the plaintiff partnership, and that it was the intent of the corporate group to euchre the partnership out of the profits about to be realized from the importations financially arranged through Stratford Factors. The sequence of events as unfolded at the trial sustains this contention and the court is persuaded to adopt the plaintiff’s version of the evidence.
In any event, on May 22, 1956, the plaintiff received a letter from Mrs. Goldman informing him that the Hamilton Company was “ dissolved ”. On the same day, Mr. Goldman, on the same type of stationery, also wrote him asking him to co-operate in saving the partnership from unnecessary loss and to help wind up its affairs. The plaintiff Eosner testifies, and there is no contra evidence, expressed or implied, that he did not know of the existence of the Hamilton Tile Corporation until July of 1956. By that time, Stratford, on notice that there was a falling out between the Hamilton Company partners, had notified both that specific shipments of merchandise were due to arrive in New York, that repayment was due Stratford, and, failing to receive payment, the related shipping documents would be offered for sale. These sales came to pass and the defendant Goldman, who did not distinguish himself as a witness, admitted that the merchandise through him ultimately was bought by the Hamilton Tile Corporation. The accounting evidence also reveals that sales of this merchandise followed to various customers, including customers to whom the merchandise had been originally sold by the plaintiff partnership, the Hamilton Company.
*591 The court feels that implicit in the conduct of the defendants was the concealed purpose to deflect profits realized from the merchandise orders previously obtained by the plaintiff partnership away from it and into the hands of the new corporate group, which Goldman had covertly joined, without making a disclosure to the plaintiff and before a winding up of this partnership relationship had been achieved.
The letter of Mrs. Goldman, dated March 22, 1956, informing plaintiff that the partnership was “ dissolved ” did not accomplish a cutoff of the partnership relationship. The good faith and full disclosure .exacted of partners continues even after a unilateral notice of intent to dissolve and assuredly during the winding up period (Mitchell v. Reed, 61 N. Y. 123; Holmes v. Gilman, 138 N. Y. 369). “ The only manner in which a partnership or joint venture can be wound up is through an accounting.” (Toeg v. Margolies, 280 App. Div. 319, 321.) Even pursuant to section 61 of the Partnership Law, on dissolution a partnership is not terminated, but continues until the winding up of the partnership affairs has been completed.
Being a partnership at will, Goldman may have had the right to dissolve and to request a winding up of the partnership affairs; he could even then go off to another new venture, but he could not secretly become part of a venture that looks for its profits to the accounts and fruits of the former partnership still in a process of being wound up.
The court places the improper profits realized by the Hamilton Tile Corporation as a result of Goldman’s connivance in the sum of $5,500 and directs that the defendants account to the plaintiff partnership in that amount.