OPINION OF THE COURT
Harold H. Hymes, J.
Stark, Henning & Co. is a partnership formed by Karol Stark and Ronald Henning for the purpose of acting as sales representatives for various firms in upstate New York. Individually, they had been representing such businesses but because they resided in different parts of the State, they formed a partnership to limit the extent of their travel. The partnership was formed by oral agreement.
On June 19, 1975, the partnership entered into a contract with the defendant, Utica Screw Products, Inc., to act as its sales representative for all of New York State, excluding New York City and the area below Kingston.
Because Ronald Henning lived in the Buffalo area, he assumed responsibility for calling on the accounts in the western half of the State. Karol Stark, who lived in Oneida County, attended the accounts in the eastern half of the State. The contract was to remain in force for one year and continued thereafter unless terminated by either party upon written 60-day notice before its expiration date, or before each succeeding anniversary date. No notice of termination was given on its first anniversary date and the contract was continued into its second year of operation.
On October 21, 1976 Karol Stark and Ronald Henning met with Gerald Williams, president of the Utica Screw Products, Inc. There was a dispute between the partners concerning the accounting for commissions. As a result of this meeting, Stark sent a letter dated October 22, 1976, to Ronald Henning, terminating the partnership. In the letter, Stark stated that each would return to his previous status as individual salesman for the companies that he had been representing. As to those companies with whom they had made agreements as a partnership, each would make a separate agreement. Utica *165 Screw Products, Inc., was one of the accounts with whom they had made an agreement as a partnership.
A copy of this letter of dissolution of the partnership was sent to the president of the defendant corporation. He answered Stark by letter dated October 25, 1976, indicating his approval of the dissolution of the partnership. He stated: "By dissolving the partnership this voids the Rep. Agreement dated June 19, 1975. Also it is understood by all parties that the commissions owed up to October 22, 1976 will be paid to Stark and Henning. Further commissions on the territory will be sent to the Rep. pertaining to that territory”.
The defendant corporation retained Ronald Henning as sales representative for another 11 months. However, it did not retain Stark. Plaintiff Stark now claims that there are commissions still due from the defendant to the partnership for orders that were received by the defendant corporation between February 10, 1976 and December 25, 1976. At the trial, plaintiff modified his claim to include invoices only up to October 20,1976.
The defendant contends that plaintiff Stark has no standing in this action because he has not received authority from his copartner to institute this action. This defense is without merit.
Upon dissolution of a partnership, any partner has the right to participate in the winding up of a partnership. He needs no authority from his copartners. A unilateral letter of dissolution does not cut off the partnership relationship. On dissolution the partnership continues until the winding up of the partnership affairs is completed. (Partnership Law, § 61.) The only way in which a partnership is wound up is through an accounting. (Toeg v Margolies, 280 App Div 319, 321; Hamilton Co. v Hamilton Tile Corp., 23 Misc 2d 589.)
The duty imposed upon the partner who is engaged in winding up the partnership business is one of agency. (43 NY Jur, Partnership, §§ 221, 227; Gilmore v Ham, 142 NY 1; BenDashan v Plitt, 58 AD2d 244; Bayer v Bayer, 215 App Div 454.) The general agency of one partner for his copartner ceases, but each partner then has the equal duty and power to do whatever is necessary to collect the debts of the partnership. (43 NY Jur, Partnership, § 218; Gray v Green, 142 NY 316.)
After the dissolution of a partnership, a partner may bind the partnership by any appropriate action necessary to wind *166 up the partnership affairs or to complete transactions unfinished at the time of dissolution. (Partnership Law, § 66, subd [1].) While a partner would not be entitled to remuneration for winding up the partnership affairs, he would be allowed reasonable expenses incurred in performing these services. (43 NY Jur, Partnership, § 230; Geist v Burnstine, 19 NYS2d 76.) Such expenses could include the commencement of an action to collect on accounts due and payable to the partnership and the hiring of counsel for that purpose. (Matter of City of New York [Allen St.], 148 Misc 488, affd 239 App Div 775, mot for lv to app or rearg den 239 App Div 827.)
A partner cannot bar his copartner from suing to collect debts due the partnership. Any judgment recovered by Stark would be for the benefit of the partnership and not for himself individually. It would then be up to the partners to wind up the partnership through an accounting.
Plaintiff Stark is suing the defendant for commissions that he claims are due the partnership based on a written contract of employment and an oral modification of said written contract. The original agreement provided for the payment of 5% commission on new business obtained by the partnership. Two and one-half percent commission was to be paid "on the existing business with Kason Hardware Corp. and Bernz-O-Matic Corp.” It was understood that under the written contract no commissions would be paid on "house accounts”, which were named in the contract as "American Thermostat, Syracuse Gauge and Safety Tool”. According to the testimony at the trial, “house accounts” were defined as those accounts with which the defendant was already doing business and which sent in orders directly to the home office. The materials which would be ordered by these accounts had usually already been manufactured according to individual specifications and were kept on hand by the defendant to fulfill orders from the "house accounts” as they were received. Payment of commissions was to be made to Stark, Henning & Co. following payment to the defendant. Also, a copy of each invoice sent to the customer was also to be sent to the plaintiff partnership.
After the agreement had been in effect for a few months, the plaintiff Stark was asked by Williams, president of the defendant corporation, to visit the "house accounts” with a view to obtaining additional orders from them. In order to induce Stark to be more vigorous in contacting new customers and performing "missionary” work on behalf of the defendant *167 in a search for new business, it was agreed orally that the partnership would receive 2Vi% commission on business from "house accounts”. Both parties agree that this was the understanding of the oral modification of the written agreement.
The defendant’s ledger showing orders received to the benefit of Karol Stark and Stark, Henning shows that commissions were paid to the plaintiff and that the last check for commissions is dated March 8, 1976. However, commissions were not paid on orders received from February 10, 1976 to October 28, 1976. It is the defendant’s contention that since payment on these orders was not received until after the dissolution of the partnership on October 22, 1976, that the commissions were not earned and, therefore, are not payable to the plaintiff. The bookkeeper for the defendant corporation testified that, at the direction of the president of the corporation, she had been paying the plaintiff commissions on "house accounts” even though it was not provided for in the written sales representative contract. After October 22, 1976, she stopped payments of such commissions upon the order of the president.
The defendant was incorrect in assuming that the dissolution of the partnership voided the contract with the plaintiff. The dissolution of a partnership operates only with respect to future transactions. All past transactions and obligations of the partnership continue until all pre-existing matters are terminated. The partnership continues to be responsible for its obligations and debts, and third parties are responsible to the partnership for obligations which they owe said partnership. "[T]he contractual rights of the latter [partnership] continue to be enforcible, though only by action * * * in the name of all” (Horst v Roehm, 84 F 565, 568, affd 178 US 1).
According to the terms of the agreement, it could be terminated "upon written 60-day notice at its expiration date by either party. In the event no notice is given at anniversary date, this contract remains in force until such time as notice is given at succeeding anniversary dates”. The first anniversary date of June 19, 1976 had passed. The next anniversary date was June 19, 1977. The date of dissolution was October 22, 1976. The contract was legally in effect, therefore, until June 19, 1977, and it was not terminated by the unilateral letter of dissolution by plaintiff Stark. On this ground alone the plaintiff was entitled to his commissions because the *168 contract was still in effect on orders received up to October 22, 1976.
However, as events occurred after that date, both parties assumed the contract had been canceled and Stark did no further work for the defendant. He offered to continue as sales representative and, when this was rejected by the defendant, he offered to take any new sales representative around to meet the accounts that he had been contacting for the defendant. This offer was also refused. Nevertheless, the defendant did continue to use the services of the other partner, Ronald Henning, for an additional 11 months.
Even under the theory that the contract had been terminated, the plaintiff was still entitled to commissions on orders received up to the date of dissolution. Although plaintiff’s complaint at first sought commissions on orders received up to December 25, 1976, at the trial he modified his demand and asked only for commissions owed up to October 22, 1976. The only reference to the time when payment of commissions was due is the clause that states: "Payment is to be made to Stark, Henning & Co. following payment to us”. Under the terms of the agreement, both written and oral, the plaintiff had performed all that was required of him. He had visited the various "house accounts”, he had obtained one new account, Remington Arms, and he had visited on behalf of the defendant in seeking new business, 30 plants.
"Where the major consideration in the earning of commissions is procurement of orders for the defendant, the employee is entitled to commissions on the sales he obtained during the period of employment”. (Maloney v Jareo Metal Prods. Corp., 144 NYS2d 128, 132; Krause, Inc. v Gardner, 99 NYS2d 592; see, also, Dibble v Dimick, 143 NY 549.)
The defendant’s bookkeeper testified that payment had been received on all the invoices listed in the plaintiff’s complaint. She stated, however, that one commission earned on the account of Webster Plastics was paid to Ronald Henning because that company was in his territory. Although she also testified that commissions had been paid on some accounts from February 25 through April 30, 1976, the court has been unable to see such payments reflected in the copies of the checks for commissions presented to the court.
Judgment is awarded to the plaintiff, together with interest and disbursements, as follows: 2Vi% commission on all in *169 voices in plaintiffs Exhibit 4, except for Webster Plastics, and 5% commission on invoice of Remington Arms.