In the Matter of AVROM R. VANN, Respondent-Appellant, v KREINDLER, RELKIN & GOLDBERG, Appellant-Respondent, et al., Defendants.

First Department, December 30, 1980

APPEARANCES OF COUNSEL

*Stephen M. Axinn* of counsel *(Kreindler & Relkin* and *Skadden, Arps, Slate, Meagher & Flom,* attorneys), for appellant-respondent.

*Kurt J. Wolff* of counsel *(Atterbourg, Steindler, Houston & Rosen, P.C.,* attorneys), for respondent-appellant.

OPINION OF THE COURT

FEIN, J.

On December 28, 1972, plaintiff-petitioner (Vann), having been an associate with the firm of Kreindler, Relkin, Olick & Goldberg (KROG) for one and one-half years, entered into a written agreement making Vann a "partner

in the firm" with compensation to be fixed by the management committee as a percentage of the firm's net fees with a right to draw no less than $2,000 a month on account of such compensation. Vann was not to "incur or make any financial obligations or commitments in the firm's name without prior approval of the Management Committee"; he was required to make a capital contribution of only $5,000 and his liability for debts of the firm was limited to the amount of his capital account. The "general partners" agreed to indemnify and hold him harmless from all other ordinary liabilities of the firm. He was given "no interest in the assets of the partnership, the name of the firm, its clients * * * or in any fees * * * or any other assets of the firm." Termination of Vann's partnership interest could only occur upon his suspension or disbarment, conviction of a crime, bankruptcy or commission of acts of moral turpitude. The only reference to the consequences of "the dissolution of the firm" concerned payment of Vann's compensation and capital.

The agreement included a broad arbitration clause covering "[a]ny controversy arising out of or in any way relating to this agreement, including * * * any controversy relating to dissolution". The contract provided that it was the entire agreement between the parties which could not be modified except by a writing signed by Vann and "all general partners". The agreement was signed by Vann, Kreindler, Olick and Goldberg. Relkin did not sign, apparently an oversight, a designated place having been provided for his signature.

On March 31, 1974, Olick left the firm, dissolving the partnership by operation of law (Partnership Law, § 60). A new firm, Kreindler, Relkin & Goldberg (KR&G) was formed. There was no written agreement. Vann now asserts there then occurred a change in the relationship of Vann and the firm.

On January 1, 1977, Thomas Winslow was admitted as a partner. There was no written agreement and the firm retained its name.

In 1978, a proposed written partnership agreement was discussed but never executed.

On January 1, 1979, Robert Zadek became a "partner", to be compensated solely on a fixed annual salary and with no interest in the assets. The firm retained its name and continued without written agreement among the partners.

In September, 1979 Goldberg agreed to withdraw unless a written agreement was entered into by December 21, 1979.

In October, 1979 Kreindler and Relkin presented Vann with a proposed partnership agreement under which Vann was to have no interest in the assets but was to receive a portion of the firm's fees. When Vann refused to sign the proposal, a new proposal was made making him a junior partner at a fixed salary, which he also refused. He insisted that at least since 1977 he had been a partner with an interest in the partnership assets proportionate to his share of the net fees of the firm (10.9%). Vann retained counsel and was then barred from the offices of the firm. Goldberg subsequently withdrew. The assets of KR&G are now utilized by Kreindler and Relkin (K&R).

On January 4, 1980, Vann commenced an action for an accounting and damages. On the same day, KR&G, the partnership, served a notice demanding arbitration pursuant to the arbitration clause of the 1972 agreement.

On January 14, 1980, Vann moved for the appointment of a temporary receiver.

On January 9, Vann commenced a proceeding to stay arbitration. On his application to the court, he asserted that the financial statements of the firm and the balance sheets indicated that he was a partner, as did the firm's partnership income tax returns, which specifically stated he was not a "limited partner". Vann noted that the stationery of the firm indicated he was a full partner.

KR&G cross-moved to compel arbitration, pursuant to the arbitration clause in the 1972 agreement. KR&G asserted that Vann had continued only as a "limited", or "junior" partner. The firm relied upon the 1972 agreement and upon its letter to Vann on February 20, 1975, after Olick had retired from the firm, which stated that Vann was to have an increase in compensation "[i]n

accordance with the Agreement of December 28, 1972". Vann asserts that in 1977, almost three years after Olick had left, there was "a very definite oral agreement" making him a partner sharing in the assets and the profit and loss of the partnership.

The issue is whether the arbitration clause in the 1972 agreement survived the changes in the partnership, and the increase in Vann's salary and drawing account, and other financial benefits.

A partnership is dissolved when a partner leaves (Partnership Law, § 60). Vann asserts that when Olick left, the partnership with which Vann had the agreement including the arbitration clause went out of existence as a matter of law. He further states that the new partnership was dissolved when Winslow and Zadek became partners. However, the law does not dissolve a partnership and create a new one when one or more partners are added (Partnership Law, § 62). Vann not only relies upon the alleged terminations by operation of law, but upon what he asserts was an oral agreement making him a partner in 1977. Vann overlooks the fact that the 1972 agreement provided it could not be modified except by a writing signed by the parties.

During the years of Vann's relationship with the partnership, several proposed drafts of partnership agreements were prepared, none of which were executed, at least partly because of Vann's refusal to sign. KR&G asserted that Vann continued on as a limited or junior partner, in accordance with the 1972 agreement, throughout his association with the firm.

Special Term found substantial evidence for the conclusion that the parties "by their conduct have treated the 1972 agreement as an on-going continuous agreement" and that there was little proof that Vann had been made a general or other kind of partner with an interest in the assets of the firm. On this basis Special Term denied Vann's application for the appointment of a receiver, especially in view of the firm's ability to respond in damages and the severe impact a receiver would have on the law firm. Nonetheless, Special Term concluded that because of the several

changes in the firm, "dissolution has occurred several times and the new partnership is not a proper party to demand application of the 1972 agreement with Vann in the absence of proof that said agreement had been continued or adopted by the new partnerships." Thus, petitioner's application to stay arbitration was granted.

We have concluded that Special Term properly declined to appoint a receiver, but erred in staying arbitration.

The subject matter of this dispute plainly falls within the broad arbitration clause. There is surface merit to Vann's contention that he cannot be required to arbitrate with KR&G or K&R because the agreement was made with the firm of Kreindler, Relkin, Olick & Goldberg, which Olick left and Goldberg subsequently left. Vann contends that there is no agreement between the current parties calling for arbitration of their dispute. However, this ignores the realities.

So far as appears, Vann's working relationship did not change on Olick's withdrawal or upon the addition of the new partners. The primary requirements of CPLR 7501 and 7503 are clearly met. Resolution of disputes by arbitration was explicitly contemplated *(Schubtex, Inc. v Allen Snyder, Inc.,* 49 NY2d 1). The language is clear and unequivocal *(Matter of Lehman v Ostovsky,* 264 NY 130, 132). Vann, the party moving for a stay, was not "inveigled" into arbitration *(Matter of Marlene Inds. Corp. [Carnac Textiles],* 45 NY2d 327, 334). The issue turns on the effect of the dissolution of KROG by operation of law when Olick left. Although the entity changed, the relationship continued as before, an ongoing continuous partnership. In this context, the dissolution had no real significance. KR&G was, in effect, the assignee of KROG.

It is established that "[a]n assignee of a contract may avail itself of an arbitration clause contained therein" even though the assignee was not a party to the underlying agreement and the contract does not refer to an assignee *(Matter of S & L Vending Corp. v 52 Thompkins Ave. Rest.,* 26 AD2d 935). The caveat in that case respecting nonassignability of a contract for personal services need not concern us here. The personal services continued to be rendered

as before. They did not become more or less unique. The only change was Olick's departure, of no significance in this context. Instructive is *Matter of Lowenthal* (199 App Div 39, affd 233 NY 621), holding a receiver entitled to enforce an arbitration provision. In *Matter of Lipman (Haeuser Shellac Co.)* (289 NY 76), the agreement was with a corporation whose president discontinued doing business as a corporation and operated the business as an individual under a trade name. He was held entitled to enforce the arbitration clause, although not a party to the agreement requiring arbitration. KR&G is in a similar position here. This court has held that an assignee of a contract containing an arbitration clause may be compelled to arbitrate *(Blum's v Ferro Union Corp.,* 36 AD2d 584, affd 29 NY2d 689). The rationale is that an assignee assumes both the rights and the obligations of the assignor.

The relationship between a dissolved partnership and its successor would seem to be analogous to that between an assignee and an assignor, particularly where, as here, a partner retires and the business otherwise continues as before. At least under these circumstances, a successor partnership should be allowed to invoke an arbitration agreement. Moreover, Vann's agreement to arbitrate was not necessarily with the partnership as such, but may be read as an agreement with its individual members that he would arbitrate his disputes with them. Here, it is plain that when Olick left there was an agreement to continue operations under the former partnership agreement with Vann. Thus we have a valid and written agreement to arbitrate disputes in the 1972 agreement entered into by Vann on the one hand and Kreindler, still a partner in the current format of the firm, on the other. On this basis alone there is sufficient on which to find an agreement to arbitrate.

It is undisputed that there was an arbitration agreement. Even assuming that there is an issue as to termination of the agreement by statutory dissolution of the partnership, due to change in makeup of the partnership, this is an issue for the arbitrators and not for the courts. It is now settled that all issues of termination are for the arbitrators to

decide *(Matter of Lipman [Haeuser Shellac Co.], supra; Matter of Riccardi [Modern Silver Linen Supply Co.],* 45 AD2d 191, affd 36 NY2d 945). In our view this issue may be decided by the arbitrators, despite Vann's contention that the partnership which now seeks arbitration is not the same as the partnership which signed the agreement. Moreover, the arbitration clause itself provides in part for arbitration of "any controversy relating to dissolution".

The order and judgment, Supreme Court, Bronx County (CHANANAU, J.), entered July 30, 1980 granting plaintiff-petitioner's application to stay arbitration, denying the cross motion by defendants-respondents to stay the action and compel arbitration, permitting plaintiff to proceed with his action in Supreme Court, Bronx County, and denying plaintiff-petitioner's motion for an order appointing a temporary receiver during the pendency of the action, should be modified on the law to deny the application to stay arbitration and grant the cross motion to compel arbitration and to stay plaintiff's action in Supreme Court, Bronx County, and otherwise affirmed, without costs.

KUPFERMAN, J. P., BIRNS, SANDLER and LUPIANO, JJ., concur.

Order and judgment (one paper), Supreme Court, Bronx County, entered on July 30, 1980, modified, on the law, to deny the application to stay arbitration and grant the cross motion to compel arbitration and to stay plaintiff's action in Supreme Court, Bronx County, and otherwise affirmed, without costs and without disbursements.