In re C–TC 9TH AVENUE
PARTNERSHIP,
Debtor.

Bankruptcy No. 94–11682.

United States Bankruptcy Court,
N.D. New York.

June 28, 1995.

Certilman Balin Adler & Hyman (Michael D. Brofman, of counsel), East Meadow, New York, for debtor.

DeGraff, Foy, Holt–Harris & Mealey (Robert J. Rock, of counsel), Albany, New York, for Norton Company.

William A. Nowak, Office of Town Attorney, Newtonville, New York, for Town of Colonie.

## MEMORANDUM–DECISION AND ORDER

ROBERT E. LITTLEFIELD, Jr., Bankruptcy Judge.

This matter is before the Court by way of cross-motion dated June 10, 1994 by creditor Norton Company (hereinafter "Norton") seeking, *inter alia*, dismissal of the case of C–TC 9th Avenue Partnership (hereinafter "Debtor") pursuant to section 1112(b) of the Bankruptcy Code (11 U.S.C. §§ 101–1330 hereinafter the "Code"). Simultaneously pending are two adversary proceedings, one of which was commenced in this Court by Debtor against Norton (94–91113) and the other commenced originally in State Court by Norton against, *inter alia*, the Debtor and subsequently removed by Debtor to this Court (94–91114).[1]

Norton's dismissal cross-motion primarily presents the issue of whether the Debtor's case should be dismissed due to its ineligibility to maintain a case under Chapter 11.

## FACTS

The Debtor is a New York general partnership which is engaged in the business of ownership and rental of commercial real property located in Colonie, New York which the Debtor acquired from Norton prepetition (hereinafter "Property"). Richard Cabral and Timmons Corporation were the only general partners until the prepetition withdrawal from the Debtor partnership by Richard Cabral.

The Debtor, in connection with acquiring the Property from Norton, delivered to Norton certain notes and a mortgage on the Property. Norton and the Debtor were engaged in substantial prepetition litigation in State Court involving the Property, mortgage, notes and rights of the parties thereunder. In the context of the State Court litigation, the New York State Appellate Division, Third Department granted Norton's motion to sever its foreclosure proceeding from the Debtor's counterclaims against Norton. Norton sought appointment of a receiver but was automatically stayed by the filing of the Debtor's Chapter 11 petition.

On May 9, 1994 (hereinafter "petition date") the Debtor filed its voluntary petition seeking relief under Chapter 11. The Debtor's schedules disclose a total of fewer than twenty creditors with Norton holding both

---

1. Prior to the hearing on Norton's cross-motion, Norton had moved in United States District Court seeking withdrawal of the reference, abstention and remand of the above adversary proceedings to State Court. Norton's instant cross-motion seeking dismissal was, by agreement of the parties, held in abeyance pending resolution of Norton's motions in District Court. The District Court subsequently denied Norton's motions.

the largest secured (approximately $9 million) and largest unsecured (approximately $1.6 million) claims. The Debtor has continued in business in its normal course since the petition date. More than one year later, the Debtor has failed to file a disclosure statement and plan.

After the District Court denied Norton's motions (see n. 1) the parties conferenced with this Court which resulted in their agreeing to a briefing schedule on a legal issue raised in Norton's cross-motion concerning the Debtor's eligibility to maintain a case under Chapter 11. Legal memorandums were submitted on behalf of the Debtor, Norton and the Town of Colonie Receiver of Taxes (hereinafter the "Town"). No further oral argument on Norton's cross-motion was requested.

## DISCUSSION

As none of the parties have referred to any agreements between or among them, the Court presumes that there are no agreements which affect the determination of the matter at bar.

■ The Debtor's principal argument is that if it is a "person" entitled to maintain a case under Chapter 7 then, *ipso facto*, it is entitled to maintain a case under Chapter 11. (See Debtor's Memorandum at 8). Code § 109(d) provides that "only a person that may be a debtor under chapter 7 . . . may be a debtor under chapter 11 of this title." A threshold legal issue, therefore, is whether the Debtor was a "person" as of the petition date within the meaning of Code §§ 101(41) and 109(d).[2] Norton argues that the Debtor is not a "person" within the meaning of Code §§ 101(41) and 109(d) by virtue of it having only a single general partner on the petition date. The Debtor asserts that its legal existence as a partnership was not terminated upon dissolution, but rather that it continues as a partnership entity (albeit for the limited purpose of winding up its affairs) and is

therefore a "person" eligible to maintain a case under Chapter 11.

■ The definition of a "partnership" is exclusively a matter of "nonbankruptcy law as construed by the bankruptcy court." H.R. 8200, H.R.Rep. No. 95–595, 95th Cong., 1st Sess. p. 196 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6157; *Chicago Title and Trust Co. v. 4136 Wilcox Bldg. Corp.,* 302 U.S. 120, 58 S.Ct. 125, 82 L.Ed. 147 (1937). Under § 10 of the New York Partnership Law (McKinney's 1988 and Supp.) (hereinafter "Partnership Law"), an association of "two or more" persons is required to be considered a general partnership. Here it is undisputed that only one general partner existed as of the petition date. In addition, the prepetition withdrawal of Richard Cabral, the other general partner of the Debtor, dissolved the partnership under New York law. See *Application of Vann,* 78 A.D.2d 255, 434 N.Y.S.2d 365, *aff'd* 54 N.Y.2d 936, 445 N.Y.S.2d 139, 429 N.E.2d 817 (1980). Thus it is clear that the Debtor partnership was dissolved prepetition as a matter of law.

■ However, dissolution does not, in itself, terminate the existence of a partnership. Section 61 of the Partnership Law provides that "[o]n dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed." Therefore, under New York statutory law, to the extent that the dissolved Debtor is in the process of, but not yet completed a "winding up" of its affairs, it retains a certain "partnership" status and, therefore, is a type of "person" under the Code.

■ As noted above, the limitations, capacity and proper business purpose of the Debtor as a partnership in dissolution is ascertained by looking exclusively to State law. Dissolution brings about a discontinuance of future transactions. See *Stark v. Utica Screw Products, Inc.,* 103 Misc.2d 163, 425 N.Y.S.2d 750 (1980). Section 61 of the Partnership Law has been interpreted as applying to the *continuation of the partners'*

---

**2.** As a matter of straightforward logic, the Court does not agree that a plain reading of § 109(d) supports the conclusion urged by the Debtor. Eligibility to be a debtor under Chapter 7 is a necessary precondition to be a debtor under Chapter 11 but not wholly sufficient in itself to justify eligibility for Chapter 11 in the same way that possessing a car is a necessary but not wholly sufficient condition for winning an automobile racing event.

liability for debts of the partnership, rather than operating to "prolong the life of an otherwise unviable entity...." *Pastor v. State Tax Comm'n*, 115 A.D.2d 144, 495 N.Y.S.2d 515 (1985). The business activity of a partnership in dissolution is limited to "completing transactions unfinished at dissolution." Partnership Law § 66(1)(a). Thus, a partnership in dissolution generally ceases carrying on of business in its normal course and its activities are limited to closing up partnership affairs, disposing of assets and paying all creditors. See *M. & C. Creditors Corporation v. Pratt*, 172 Misc. 695, 17 N.Y.S.2d 240 *aff'd* 255 A.D. 838, 7 N.Y.S.2d 662 (1938); *In re Vitelli's Estate*, 196 Misc. 644, 92 N.Y.S.2d 322 (1949). While the Debtor in dissolution technically retains partnership status under § 61 of the Partnership Law its activity and, indeed its purpose, is restricted largely to that of liquidation. It is noted that the Debtor's restricted capacity as a partnership in dissolution under New York law is inconsistent with the Debtor's stated objective in Chapter 11 of obtaining a "fresh start." (Debtor's Memorandum at 14).

The Debtor argues that if it is a "person" within the meaning of Code § 101(41) then it is eligible to be a Chapter 7 debtor under Code § 109(d). It cites the decision in *In re Donald Verona and Bernard Green*, 126 B.R. 113 (Bankr.M.D.Fla.1991) in support of the proposition that a partnership in dissolution is a "person" eligible for relief under Chapter 7. It then concludes that "since C–TC can be a debtor under Chapter 7 of Title 11, it can be a debtor under Chapter 11 of Title 11, in accordance with the plain language of 11 U.S.C. § 109(d)." (Debtor's Memorandum at 8).

The decision in *In re Donald Verona and Bernard Green* does not support the Debtor's claim to eligibility to proceed under Chapter 11. Aside from the fact that only Florida law was involved, the only issue before the bankruptcy court was whether the debtor could maintain a case under Chapter 7. As the fundamental goal of a Chapter 7 liquidation is entirely consistent with the

winding up of a partnership in dissolution, the case cited by Debtor is not instructive on the issue of whether the Debtor, as a partnership restricted to winding up and settling its affairs, is eligible to maintain a reorganization case under Chapter 11 and seek a "fresh start."

It is helpful to compare a dissolved corporation to a dissolved partnership, with regard to their respective eligibility to maintain a reorganization case under Chapter 11. In *Cedar Tide Corporation v. Chandler's Cove Inn, Ltd. (In re Cedar Tide)*, 859 F.2d 1127 (2d Cir.1988) the Second Circuit Court of Appeals concluded that a New York corporation which had been dissolved prepetition by the New York Secretary of State for failure to pay its corporate franchise taxes was eligible to maintain a reorganization case under Chapter 11. After reviewing the applicable New York statutes the Court found that a dissolved New York corporation could be reinstated *nunc pro tunc* upon its filing of a certificate and remitting certain payments to the Secretary of State. *Id.* at 1132. The *Cedar Tide* Court concluded that the dissolved corporation could maintain a case under Chapter 11 predicated upon its finding that under New York law, a statutory procedure existed for reinstating the dissolved corporation *nunc pro tunc.* Reinstatement as a corporate entity made possible its continued operations and reorganization under Chapter 11.

■ The distinction is crucial: New York law enables a dissolved corporation to seek *either* reinstatement or winding up its affairs (*Cedar Tide*, 859 F.2d at 1132) whereas it restricts a dissolved partnership to winding up its affairs. It is fairly implied by the *Cedar Tide* analysis that but for the finding that the dissolved corporation had the legal right to reinstatement and continuation, the Court would have likely limited it to Chapter 7.[3]

The goal of "a business reorganization case, unlike a [Chapter 7] liquidation case, is to restructure the business's finances so that it may continue to operate...." H.R.Rep.

---

3. The *Cedar Tide* Court discussed the circumstances in *In re Luftek, Inc.*, 6 B.R. 539 (Bankr. E.D.N.Y.1980) and distinguished the capacity of a dissolved entity to file a Chapter 7 liquidation from the capacity to maintain a Chapter 11 case. *Cedar Tide,* 859 F.2d at 1132.

No. 595, 95th Cong., 1st Sess. 220–21 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6179, 6180. Moreover, a Chapter 11 filing "may be deemed frivolous if it is clear that on the filing date there was no reasonable likelihood that the debtor intended to reorganize and no reasonable probability that it would eventually emerge from bankruptcy proceedings." *In re Cohoes Indus. Terminal, Inc.*, 931 F.2d 222, 227 (2d Cir.1991). Here it appears that, notwithstanding the Debtor's stated intentions, it does not possess the legal capacity to reorganize. *See In re Fitzgerald Group*, 38 B.R. 16, 18 (Bankr. S.D.N.Y.1983). Accordingly, the Court holds that the Debtor, which is an entity that may not carry on business in its normal course and is limited to winding up its affairs and liquidation, is not eligible to proceed under Chapter 11.

■ In addition, it appears that the primary characteristic of the Debtor's Chapter 11 case is its longstanding dispute with Norton. The Debtor's unsecured creditors are relatively insignificant in amount. It also does not appear to possess any employees (its operating reports do not reflect a monthly expense for payroll). Where the primary purpose of the filing of a Chapter 11 case is as a litigation tactic, the petition may be dismissed for lack of good faith. See *In re HBA East, Inc.*, 87 B.R. 248, 260 (Bankr. E.D.N.Y.1988) (citations omitted). The determination of whether a Chapter 11 case was filed in good faith rests upon "whether the reorganization effort essentially involves a two party dispute which can be resolved in a non-bankruptcy forum." *Id.* See also *In re Little Creek Development Company*, 779 F.2d 1068 (5th Cir.1986) (good faith standard includes (i) whether Chapter 11 is a tactic to obtain advantage, (ii) whether the reorganization is essentially a two party dispute and (iii) whether reasonable plan of reorganization can be confirmed). Here, it appears that the disputes between the Debtor and Norton could be fully resolved in a non-bankruptcy forum and that, in view of Norton's stated opposition to any plan proposed by the Debtor, confirmation of a plan of reorganization is difficult to envision.

Prior to the petition date Norton had commenced two actions against the Debtor in State Court in which it sought to foreclose its mortgage and recover on a note. The Debtor (together with its then general partners) counterclaimed seeking money damages up to $4 million. During November 1993 the Appellate Division, Third Department severed Debtor's counterclaims from Norton's foreclosure and granted Norton summary judgment in foreclosure. During May 1994 the State Court orally granted Norton's motions to appoint a referee and receiver.

The Debtor filed its Chapter 11 petition on May 9, 1994 thereby obtaining an automatic stay of the State Court proceedings. In the thirteen months since filing its Chapter 11 petition, the Debtor has continued to operate in its normal course and has failed to file a Chapter 11 plan and disclosure statement.

■ In summary, it is clear that the primary motivation for, and characteristic of, the Debtor's Chapter 11 case is its dispute with Norton. The Debtor filed Chapter 11 when it perceived that the State Court litigation took an unfavorable turn. The provisions of the Bankruptcy Code should not be used as a sword in the context of a two-party dispute. Even if the Debtor prevails in its litigation, it is precluded under State law from reorganizing or obtaining a fresh start. For the foregoing reasons dismissal of the Debtor's case is warranted.

Accordingly, it is **ORDERED** that the Debtor's case be, and hereby is, dismissed.