**In re HAGERSTOWN FIBER LIMITED PARTNERSHIP, Debtor.**

**Bankruptcy No. 98 B 41988(SMB).**

United States Bankruptcy Court, S.D. New York.

Nov. 3, 1998.

Togut, Segal & Segal, New York City, Albert Togut, of Counsel, for Debtor.

Schulte Roth & Zabel, LLP, New York City, Jeffrey S. Sabin, of Counsel, Special Counsel for Debtor.

Willkie Farr & Gallagher, New York City, Alan J. Lipkin, of Counsel, for Unofficial Bondholders' Committee.

Stroock & Stroock & Lavan, LLP, New York City, Lewis Kruger, of Counsel, Co–Counsel for Pencor First Fiber, Inc.

Kelly Drye & Warren, LLP, New York City, Steven P. Caley, of Counsel, Co–Counsel for Pencor First Fiber, Inc.

Farrell Fritz, P.C., Uniondale, NY, Ted A. Berkowitz, of Counsel, Co–Counsel for Morrison Cohen Singer & Weinstein LLP and Joel Feldman.

Kirkpatrick & Lockhart, LLP, New York City, John Sullivan, of Counsel, Co–Counsel for Morrison Cohen Singer & Weinstein LLP and Joel Feldman.

United States Trustee, New York City, Patricia H. Schrage, of Counsel.

Schlossberg & Associates, Hagerstown, MD, Roger Schlossberg, of Counsel, Co–Counsel for City of Hagerstown.

Kronish, Lieb Weiner & Hellman, LLP, New York City, Lawrence C. Gottlieb, Eric Haber, of Counsel, Co–Counsel for City of Hagerstown.

Gordon Altman Butowsky Weitzen Shalov & Wein, New York City, Irving H. Picard, Co–Counsel for Sureties.

Steptoe & Johnson, LLP, Washington, DC, Co–Counsel for Sureties.

Wilson Smith Cochran & Dickerson, Seattle, WA, John D. Wilson, David M. Jacobi, of Counsel, Co–Counsel for R.W. Beck, Inc. and Michael N. Macaulay.

Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, White Plains, NY, Mark G. Ledwin, of Counsel, Co–Counsel for R.W. Beck, Inc. and Michael N. Macaulay.

## MEMORANDUM DECISION GRANTING REARGUMENT AND DISMISSING CHAPTER 11 CASE

STUART M. BERNSTEIN, Bankruptcy Judge.

In *In re Hagerstown Fiber Ltd. Partnership*, No. 98 B 41988, 1998 WL 538607 (Bankr.S.D.N.Y. Aug. 24, 1998) ("*Hagerstown*"), I ruled that the debtor was a dissolved partnership when it filed this chapter 11 case to reorganize its business. I concluded that under the law of this Circuit, *see In re C–TC 9th Ave. Partnership*, 113 F.3d 1304 (2d Cir.1997), the case had to be dismissed. *Hagerstown*, 1998 WL 538607, at *10. In subsequent proceedings, several of the parties questioned different aspects of my conclusion regarding dismissal, although the original movant, Pencor First Fiber, Inc. ("PFF"), agreed that the case should be dismissed. Based upon the arguments presented by the parties, I conclude that I should reconsider this aspect of my earlier decision, but adhere to my prior conclusion that this chapter 11 case must be dismissed.

### BACKGROUND

The procedural posture of the matter before me is unusual. As noted, I earlier concluded that because the debtor filed this case with the express intention of reorganizing, it had to be dismissed under *C–TC*. Citing *In re Shea & Gould*, 214 B.R. 739, 745–46 (Bankr.S.D.N.Y.), *aff'd, Durkin v. Shea & Gould*, 97 Civ. 8879(AGS) (S.D.N.Y. Dec. 4, 1997), I distinguished the debtor's case from one in which a dissolved partnership files a chapter 11 case for the purpose of liquidating. *See Hagerstown*, 1998 WL 538607, at *10. Following the decision on the motion, PFF submitted a proposed order dismissing the case.

The debtor responded with an objection, proposed counter-order and a related motion. The debtor maintained that it had properly preserved its right to liquidate in chapter 11, and, also citing *Shea & Gould*, contended that *C–TC* did not require dismissal of its

case.[1] The bondholders, who sided with the debtor, further argued that the debtor's intent in entering into chapter 11 was not determinative. The debtor's proposed counter-order continued the case and authorized the debtor to wind up its affairs in chapter 11. Alternatively, if I dismissed the case, I should do so only on the condition that the debtor have the opportunity to exercise its "absolute right" to convert this case to one under chapter 7. At a minimum, I should retain jurisdiction to hear final fee applications by the debtor's professionals.

PFF, joined by others, raised several points in response. Initially, PFF contended that the debtor's proposed counter-order was procedurally improper. Unlike PFF's own order, it did not accurately reflect the disposition of the motion. PFF suggested that I treat the debtor's submission as a motion to reargue and deny it. On this point, PFF urged that *C–TC* foreclosed chapter 11 relief for any purpose, relegating all dissolved partnerships who desired voluntary bankruptcy to chapter 7. Further, PFF argued, for the first time, that even if the debtor's putative general partner, Pencor, Inc. ("Pencor"), were its only general partner, the "Major Decisions" clause of the partnership agreement (§ 4.03) prevented Pencor from filing this case without the consent of a majority in interest of the non-affiliated limited partners. With Pencor in power, the non-affiliated limited partners included PFF and its own affiliates. They did not consent to the filing of this case.

Although the debtor contends that it is not seeking to reargue the *Hagerstown* decision, see *Debtor's (I) Objection to Proposed Order Dismissing Chapter 11 Case [etc.]*, dated Sept. 9, 1998 ("*Debtor's Objection*"), at p. 2, that is precisely what it is doing on this

motion. It does not ask me to reconsider my conclusion that the debtor is a partnership in dissolution, but it does ask me to reconsider my conclusion that the chapter 11 case must be dismissed. Moreover, there is no procedural basis for reconsidering this conclusion except through reargument.

## DISCUSSION

### A. Motion for Reargument

 A party moving for reargument[2] must demonstrate that the court overlooked controlling decisions or factual matters "that might materially have influenced its earlier decision." *Anglo–American Ins. Group v. CalFed, Inc.*, 940 F.Supp. 554, 557 (S.D.N.Y.1996)(quoting *Morser v. AT & T Information Sys.*, 715 F.Supp. 516, 517 (S.D.N.Y.1989)); *accord Farkas v. Ellis*, 783 F.Supp. 830, 832–33 (S.D.N.Y.), *aff'd* 979 F.2d 845 (2d Cir.1992). The rule permitting reargument must be narrowly construed to avoid repetitive arguments on issues that the court has already fully considered. *Farkas v. Ellis*, 783 F.Supp. at 832. Further, the parties cannot advance new facts or arguments, and may not submit affidavits or new material. *Pereira v. Aetna Cas. & Sur. Co. (In re Payroll Express Corp.)*, 216 B.R. 713, 716 (S.D.N.Y.1997).

The parties have advanced new arguments and submitted affidavits and other new material on this motion. These will not be considered. The only appropriate question is a very narrow one that revisits the conclusion I reached in *Hagerstown*: does *In re C–TC 9th Ave. Partnership*, 113 F.3d 1304 (2d Cir. 1997) prevent the debtor, a dissolved limited partnership, from liquidating in chapter 11. This issue was properly raised during the

---

1. The debtor raised this same argument in opposition to the motion to dismiss. *See Debtor's Response in Opposition to the Motion of Pencor First Fiber, Inc. for an Order Dismissing the Debtor's Chapter 11 Case, Etc.*, dated May 6, 1998 ("*Debtor's Response*"), at 48–49.

2. Bankr.S.D.N.Y.R. 9023–1(a) governs a motion for reargument. It states:

 A motion for reargument shall be served within 10 days after the entry of the Court's determination of the original motion and, unless the Court orders otherwise, shall be made

returnable within the same amount of time as required for the original motion. The motion shall set forth concisely the matters or controlling decisions which counsel believes the Court has not considered. No oral argument shall be heard unless the Court grants the motion and specifically orders that the matter be reargued orally.

 Rule 9023–1(a) is derived from Rule 6.3 of the local civil rules for the United States District Court for the Southern District of New York.

original motion, but was not fully explored in the decision. Moreover, I now conclude that I misstated the law when I suggested that a dissolved partnership might liquidate in chapter 11 under some circumstances. Thus, the pending motion offers me the opportunity to clarify the reasoning I employed in my previous decision, and accordingly, reargument is granted.

## B. C–TC

*C–TC* was, in many ways, a typical single asset case. The debtor ("C–TC") was a general partnership formed under New York law. Originally, there were two general partners, but prior to the bankruptcy filing, one partner withdrew. C–TC owned real property subject to a purchase money mortgage held by Norton. Norton's claim was undersecured. After C–TC defaulted, Norton commenced a mortgage foreclosure action in state court. The day the state court appointed a receiver, C–TC filed its chapter 11.

The bankruptcy court dismissed the petition on two, alternative theories. Under New York law, a dissolved partnership, still exists but must wind up, or liquidate. *In re C–TC 9th Ave. Partnership,* 193 B.R. 650, 652–53 (Bankr.N.D.N.Y.1995). Unlike a dissolved corporation, a dissolved general partnership cannot be reinstated. *Id.* at 653. The bankruptcy court ruled that the filing was inconsistent with the rehabilitative goals of chapter 11, and accordingly, C–TC was not eligible to file a chapter 11:

> The goal of "a business reorganization case, unlike a [Chapter 7] liquidation case, is to restructure the business's finances so that it may continue to operate...." H.R.Rep. No. 595, 95th Cong., 1st Sess. 220–21 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6179, 6180. Moreover, a Chapter 11 filing "may be deemed frivolous if it is clear that on the filing date there was no reasonable likelihood that the debtor intended to reorganize and no reasonable probability that it would eventually emerge from bankruptcy proceedings." *In re Cohoes Indus. Terminal, Inc.,* 931 F.2d 222, 227 (2d Cir.1991). Here it appears that, notwithstanding the

Debtor's stated intentions, it does not possess the legal capacity to reorganize. *See In re Fitzgerald Group,* 38 B.R. 16, 18 (Bankr.S.D.N.Y.1983). Accordingly, the Court holds that the Debtor, which is an entity that may not carry on business in its normal course and is limited to winding up its affairs and liquidation, is not eligible to proceed under Chapter 11.

*Id.* at 653–54. The bankruptcy court also held, in the alternative, that C–TC had filed its chapter 11 case in bad faith. The filing was a litigation tactic employed in a two party dispute that could be resolved in state court. *Id.* at 654. Moreover, C–TC could not confirm a plan over Norton's stated opposition. *Id.*

The district court affirmed. It agreed that C–TC was a dissolved partnership, and ineligible to proceed under chapter 11. *C–TC 9th Ave. Partnership v. Norton Co.,* 196 B.R. 666, 666 (N.D.N.Y.1996). It did not reach the bankruptcy court's alternative holding that C–TC had filed the chapter 11 case in bad faith. *Id.*

The Court of Appeals affirmed on both grounds cited in the bankruptcy court's holding, but only the first ground concerns us here. The Court agreed with the fundamental premise that the primary purpose of chapter 11 is to enable a business to reorganize and to emerge as an operating enterprise. *In re C–TC 9th Ave. Partnership,* 113 F.3d at 1308; *accord* 7 Lawrence P. King, *Collier on Bankruptcy* ¶ 1112.04[4][a], at 1112–25 (rev. 15th ed. 1998)("*Collier*"); *see NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 527, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984)("the policy of Chapter 11 is to permit the successful rehabilitation of debtors"). If the debtor no longer exists except for the purposes of liquidation, there is nothing to rehabilitate. *In re C–TC 9th Ave. Partnership,* 113 F.3d at 1308. This distinguished C–TC from a dissolved corporation which could seek reinstatement, and could, therefore, file a chapter 11 petition. *Id.* at 1309; *see Cedar Tide Corp. v. Chandler's Cove Inn, Ltd. (In re Cedar Tide Corp.),* 859 F.2d 1127, 1132–33 (2d Cir.1988), *cert. denied,* 490 U.S. 1035, 109 S.Ct. 1933, 104 L.Ed.2d 405 (1989).

█ Chapter 11 eligibility depends, therefore, on the legal ability or "option" to continue in business.[3] *In re Fitzgerald Group*, 38 B.R. 16, 18 (Bankr.S.D.N.Y.1983) (dismissing chapter 11 case filed by dissolved partnership because "the debtor has no option but to liquidate [and][l]iquidation is not the proper function of the special remedy of a Chapter 11 reorganization proceeding"). Further, the debtor cannot escape a state law restriction on continuing in business by filing bankruptcy. *See Chicago Title & Trust Co. v. Forty–One Thirty–Six Wilcox Bldg. Corp.*, 302 U.S. 120, 129, 58 S.Ct. 125, 82 L.Ed. 147 (1937). Because New York law prevented C–TC from continuing in business and required it to liquidate, the Court of Appeals concluded that C–TC "is not a 'person' eligible to avail itself of reorganization in Chapter 11." 113 F.3d at 1309.

In reaching this conclusion, the Court equated reorganization with rehabilitation. But C–TC also argued, for the first time on appeal, that even if it could not reorganize, *i.e.*, rehabilitate, it could still liquidate in chapter 11. *Id.* at 1309. Initially, the Court ruled that the debtor had waived this argument. *Id.* The Court then considered and rejected it:

> [W]hile a debtor may conclude Chapter 11 proceedings by liquidating, and may even enter them with the intent to liquidate if necessary, there is no reason a debtor should be permitted to enter these proceedings without a possibility of reorganization. C–TC has not claimed that there was (or is) any possibility of reorganization here. Hence, although the issue is waived, we believe that it is, in any event, without merit.

*Id.* This last point, all agree, makes chapter 11 unavailable to a dissolved partnership for any purpose. The question raised concerns its persuasive force.

## C. Shea & Gould

█ This last point was squarely met in *In re Shea & Gould*, 214 B.R. 739 (Bankr. S.D.N.Y.1997). Shea & Gould, a dissolved New York general partnership, filed its chapter 11 petition for the express purpose of liquidation. A creditor moved to dismiss on the authority of *C–TC*. The bankruptcy court held that under the circumstances of the case, the debtor could liquidate in chapter 11.

The *Shea & Gould* court observed that unlike *C–TC*, the debtor did not improperly represent that it would reorganize, *id.* at 744, something it clearly could not do. The court also agreed with the debtor that *C–TC*'s discussion of liquidation was *dicta*, and did not mandate dismissal. *Id.* at 745. Further, the court explained how barring the debtor from liquidating in chapter 11 led to several anomolies. For example, since a general partnership dissolves under state law when it files a bankruptcy petition, *see* Unif. Partnership Act § 31(5), 6 U.L.A. 771 (1995), no general partnership could ever file a chapter 11. *Id.* at 745.[4] In addition, the Bankruptcy Code permits a partnership to be a chapter 11 debtor, *id.* at 745–46 (citing 11 U.S.C. §§ 101(41), 109), and permits a debtor to liquidate in chapter 11. *Id.* at 746 (citing 11 U.S.C. § 1123(b)(4)). Courts should not engraft conditions or limitations on the otherwise unqualified provisions of the Bankruptcy Code. *Id.* (citing *Toibb v. Radloff*, 501 U.S. 157, 160, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991)).

Next, barring the dissolved partnership from chapter 11 contravenes the provisions of section 303 governing involuntary petitions. *See In re Shea & Gould*, 214 B.R. at 746 n. 3. Under 11 U.S.C. § 303(b)(3)(B), an involuntary chapter 11 filing may be commenced against the partnership even if all of the general partners are in bankruptcy. Any general partner's bankruptcy, however, automatically dissolves the general partnership. *See* Unif. Partnership Act § 31(5), 6 U.L.A.

---

3. As long as entity has this option, it does not seem to matter that the entity rejects it and decides to file a chapter 11 in order to liquidate. *See In re Martin–Trigona*, 760 F.2d 1334, 1342 (2d Cir.1985).

4. A limited partnership does not automatically dissolve when it files a bankruptcy petition. *See* Rev. Unif. Ltd. Partnership Act § 801, 6A U.L.A. 240 (1995).

771 (1995). Thus, although the partnership is dissolved if all of the general partners file, section 303 nevertheless authorizes the chapter 11 case.

Finally, a dissolved partnership does not terminate. It continues to exist, and applicable New York law does not prevent a dissolved partnership from liquidating in chapter 11. In this regard, the ability to rehabilitate is a bankruptcy concept. As *Shea & Gould* implies, state law does not concern itself with whether the partnership winds up its affairs in bankruptcy or outside of bankruptcy—its only concern is that it wind up. Indeed, no one questions a dissolved partnership's right to wind up in chapter 7. Since liquidation is also a permissible result in chapter 11, chapter 11 should be available to the dissolved partnership.

### D. *C–TC* Requires Dismissal of this Case

I agree with *Shea & Gould* that *C–TC*'s discussion of the waived liquidation argument is *dicta*. In addition, a chapter 11 liquidation of this debtor does no more violence to Maryland law than Shea & Gould's liquidation did to New York law. *Cf. In re Heark Corp.*, 18 B.R. 557, 560 (Bankr.D.Md.1982) (stating, in *dicta*, that a chapter 11 filed by a dissolved corporation might be consistent with Maryland law). I nevertheless conclude that *C–TC* requires dismissal of this case.

*C–TC* established a bright line test for chapter 11 eligibility without regard to rehabilitation or liquidation. In either case, the debtor must have the legal "option" to continue in business. This is evident from *C–TC*'s discussion of the purpose of chapter 11 and the restatement of this principle in its conclusion. The Court of Appeals did not limit its holding to dissolved partnerships that filed chapter 11 for the purpose of reorganization. Instead, the conclusion sweeps in all dissolved partnerships that file chapter 11 for any reason:

Because we find that C–TC, a dissolved New York partnership, is not a "person" for purposes of Chapter 11 and therefore cannot pursue a filing under that Chapter, we affirm the dismissal below.

113 F.3d at 1313.

I have already concluded that the debtor was a dissolved limited partnership at the time it filed this case, and had to wind up. *Hagerstown*, 1998 WL 538607, at \*10. Further, it waived the argument that it could have sought reinstatement and continued in business. *See id.* at \*10 n. 17. This debtor, therefore, lacked the legal "option" to continue in business, and could not file a chapter 11 case.

The debtor, the bondholders and the City of Hagerstown nevertheless urge me not to dismiss this case, and to allow the debtor to liquidate in chapter 11. Invoking equity and the best interest of the debtor, its creditors and the estate, they cite numerous advantages to winding up in this chapter 11. These include the centralization of litigation and the assertion of claims for the benefit of the estate, the tax and other advantages of selling the debtor's paper mill in bankruptcy, the ability to assume valuable contracts (and reject burdensome ones), the availability of debtor in possession financing to pay the expenses of the litigation, the maximization of value and possibility of distributions to the unsecured creditors and avoidance of the waste and delay in light of the progress in the case. (*See Debtor's Objection* at ¶¶ 21–37; *Response of Unofficial Bondholders' Committee to Debtor's Application Regarding the Form of Order to be Entered on this Court's August 24, 1998 Memorandum Decision*, dated Sept. 15, 1998, at § B.7.)

At the outset, and accepting these benefits and advantages for the moment, a case cannot remain in chapter 11 if it is ineligible for relief under that chapter.[5] In any event, I previously concluded that the parties could litigate their claims in nonbankruptcy fora,

---

5. The bondholders have cited authority supporting the proposition that even if "cause" exists under 11 U.S.C. § 1112(b) to convert or dismiss a chapter 11 case, the court nevertheless has discretion to retain the case in chapter 11. *See, e.g., In re Western Pac. Airlines, Inc.*, 218 B.R. 590, 597 (Bankr.D.Colo.1998). Here, however, the "cause" is ineligibility for chapter 11 relief. Neither the bondholders' authorities nor common sense supports the continuation of the chapter 11 where the debtor is ineligible.

and that the bankruptcy offered no benefit to the unsecured creditors in light of the Global Restructuring Agreement, *Hagerstown*, 1998 WL 538607, at *11, although I am now assured that unsecured creditors will recover something.

Nor do I quarrel with the general proposition that a bankruptcy liquidation is more efficient, and in ways more advantageous, than a nonbankruptcy liquidation. However, the parties must obtain these benefits through a chapter 7 liquidation which, PFF points out, bears a strong resemblance to the chapter 11 liquidation that the debtor and the bondholders propose. The submissions suggest only two differences between liquidating under chapter 11 and chapter 7; in chapter 7, the estate will lose the benefit of 11 U.S.C. § 1146(c),[6] and a trustee, rather than Pencor, will control the case. The trustee, like the debtor in possession, can sell the paper mill free and clear of liens, assume valuable contracts and reject burdensome ones, continue to assert bankruptcy and non-bankruptcy claims on behalf of the estate, and borrow money, as the debtor has, to finance the litigation. Moreover, chapter 7 avoids the time and expense of confirming a plan.

In addition, while the debtor's and the bondholders' papers focus on the progress in case and the waste and delay that dismissal will cause, they ignore the inevitable delay and expense of continuing this chapter 11.[7] Because I dismissed the case, I did not consider PFF's alternative requests for relief from the stay to continue its state court litigation challenging its dismissal as general partner and seeking reinstatement or its motion to appoint an operating trustee. *See*

*Hagerstown*, 1998 WL 538607, at *3 n. 7. If the case is retained as a chapter 11, these matters must be addressed, as must the lingering question of Pencor's authority to file this case in the first place.

### E. The Debtor's Proposed Conditions to Dismissal

If this case must be dismissed, the debtor asks me to condition the dismissal on its "absolute right" to convert to chapter 7. A debtor's ineligibility for relief under one chapter does not deprive the bankruptcy court of jurisdiction over the case or prevent it from converting the case to a chapter under which the debtor can proceed. *Rudd v. Laughlin*, 866 F.2d 1040, 1041–42 (8th Cir.1989); *see In re Phillips*, 844 F.2d 230, 235 n. 2 (5th Cir.1988)(noting contrary authority but concluding that ineligibility under 11 U.S.C. § 109 does not affect the court's subject matter jurisdiction). If the debtor has the "absolute right" to convert this case, it has had this right for seven months but has not exercised it. Since the dismissal order will not be entered simultaneously with this decision, the debtor will have additional time to exercise any conversion right that it may possess. Thus, the imposition of the condition is not warranted.[8]

Finally, I will retain jurisdiction to hear the debtor's professional fee applications and resolve any disputes. A bankruptcy court may condition dismissal on the retention of jurisdiction to consider this issue. *See e.g.*, *In re Fox*, 140 B.R. 761, 762 (Bankr. D.S.D.1992); *In re Talandis*, 95 B.R. 108, 109 (Bankr.S.D.Iowa 1989). The debtor's professionals have provided substantial ser-

---

**6.** Section 1146(c) states:

The issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under section 1129 of this title, may not be taxed under any law imposing a stamp tax or similar tax.

**7.** In truth, this case has seen little progress. Although I signed financing and cash collateral orders and set a bar date, the case is in the infancy of its liquidation. The debtor still owns its only hard asset—the paper mill—and the litigation with PFF and the other defendants is in its early stages. The case is only seven months old, and thus far, most of the efforts have been

devoted to litigating the dismissal motion and related matters. Further, PFF made its dismissal motion promptly, and every step that the debtor has taken to prosecute the chapter 11 has been taken with the knowledge that the case might be dismissed.

**8.** Conversion will not resolve PFF's argument that Pencor lacked authority to file the petition on the debtor's behalf. If true, the court may lack personal jurisdiction over the debtor. *See In re Cedar Tide Corp.*, 859 F.2d at 1131 & n. 3; *In re Martin–Trigona*, 760 F.2d at 1340. On the other hand, an involuntary petition filed by creditors will render PFF's point moot.

vices in the case, and the fees are being funded on a nonrecourse basis. The lender's recovery is restricted to the proceeds of the debtor's adversary proceeding against PFF, its affiliates and certain third parties. *See Hagerstown*, 1998 WL 538607, at *2 (describing the adversary proceeding). The dismissal of the case may affect the amount that is awarded but should not prevent the professionals from presenting their applications or recovering the allowed amount of their compensation.

## CONCLUSION

The motion for reargument is granted for the reasons stated. Upon reargument, the Court adheres to its original decision dismissing the case. The parties are directed to settle an order on notice dismissing the case, but retaining jurisdiction over any fee disputes provided that any pertinent application is filed within fifteen days of the date that the order dismissing this case is entered.

Settle order on notice.