United States *v.* R. J. Saunders & Co., Inc. (No. 4823)[1]

[1] C. A. D. 584.

United States Court of Customs and Patent Appeals, February 8, 1955

*Warren E. Burger*, Assistant Attorney General (*Richard E. FitzGibbon* and *Joseph E. Weil*, special attorneys, of counsel), for the United States.

*Jordan & Klingaman* (*Edward F. Jordan* of counsel) for appellee.

*Brooks & Brooks* (*Richard F. Weeks* and *Thomas J. McKenna* of counsel), *amicus curiae*.

[Oral argument December 10, 1954, by Mr. Weil, Mr. Weeks, and Mr. Jordan]

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and JACKSON (retired), Associate Judges

GARRETT, Chief Judge, delivered the opinion of the court:

This is an appeal by the United States Government from the judgment entered in conformity with the decision of the First Division of the United States Customs Court (C. D. 1610, 32 Cust. Ct. 258), which sustained importer's protest against the collector's classification for duty of merchandise which is described in the brief for importer before us as follows:

The involved merchandise is described on the invoice as "parts for electron image producer," and consists of a "complete so-called electron microscope imported in knocked-down or unassembled condition." It is an electrically operated instrument or apparatus for the production of highly magnified images or shadow images of minute specimens of various materials on a fluorescent screen or on a photographic film or plate, within the instrument itself, for examination and study. It is used in industry, hospitals, universities, governmental agencies and police laboratories.

The collector assessed the merchandise for duty under paragraph 228 (b) of the Tariff Act of 1930, the pertinent portion of which reads as follows:

Par. 228 * * *

(b) * * * microscopes, all optical instruments, * * *.

Importer, in its protest, claimed the merchandise to be dutiable either under paragraph 353 of the 1930 Act, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, 82 Treas. Dec. 305, as an article "suitable for producing, rectifying, modifying, controlling, or distributing electrical energy, * * *" or, under paragraph 1551 as a photographic camera. The claim under paragraph

1551 was not mentioned in the decision of the trial court and is not argued before us, and we therefore treat it as having been abandoned.

Counsel for the Government contended before the trial court that if the merchandise were found to be not classifiable as a microscope, as held by the collector, the protest should nevertheless be overruled and the involved article be held classifiable under paragraph 360 of the 1930 Act as a "laboratory instrument."

Paragraph 360 of the Tariff Act of 1930 reads:

> Scientific and laboratory instruments, apparatus, utensils, appliances (including surveying and mathematical instruments), and parts thereof, wholly or in chief value of metal, and not plated with gold, silver, or platinum, finished or unfinished, not specially provided for. * * *

The trial court, in its decision sustaining the protest of the importer, stated as follows:

> On the basis of the record here before us, we hold that the article here in question comes within the purview of paragraph 353, Tariff Act of 1930, under the provisions therein for (1) "All articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy"; and also for (2) "articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs"; and that inasmuch as the first provision of said paragraph is a use provision, the merchandise here in question is more specifically provided for therein. * * *

During the oral argument before this court, counsel for the Government expressly abandoned any defense of the collector's classification of the merchandise as a microscope under paragraph 228 (b) of the 1930 Tariff Act. Therefore, the presumption of correctness attaching to the collector's classification is not present in this appeal, and, it may be added, no presumption of correctness attaches to the Government's contention for classification under paragraph 360 of the 1930 Act.

At the trial before the Customs Court, the record in a prior case of *R. J. Saunders & Co., Inc.* v. *United States*, 28 Cust. Ct. 39, was incorporated into the record of this case, the respective parties stipulating the merchandise in the two cases to be the same in all material respects. The judgment in the prior case was not appealed, and it was held by the trial court to be *stare decisis* of the issues in the instant case. The Government, for some reason not disclosed in the record, took no appeal from that decision, but attacks it with great vigor in the instant case.

Testimony was introduced on behalf of both the importer [1] and the Government in the incorporated case and additional testimony was introduced on behalf of both in the instant case.

In both the incorporated case and the instant case, the trial court

[1] R. J. Saunders & Co., Inc., the named appellee in the instant case, is in fact merely the broker who acted for the actual importer, North American Philips Co., Inc., in both cases.

seems to have regarded a holding of this court in the case of *W. L. Conover* v. *United States*, 17 C. C. P. A. (Customs) 324, as controlling of the issues here. That case was decided November 25, 1929, the court's opinion being written by the late Judge Hatfield, the late Judge Lenroot concurring in the conclusion. The merchandise involved consisted of a type of seismograph which was used largely in the search for oil, and it was assessed for duty under paragraph 360 of the Tariff Act of 1922, which provided for "Philosophical, scientific, and laboratory instruments, apparatus, utensils, appliances (including drawing, surveying and mathematical instruments) and parts thereof, composed wholly or in chief value of metal and not plated with gold, silver or platinum, finished or unfinished, not specially provided for, 40 per centum ad valorem."

It will be observed that paragraph 360 of the 1930 Act, quoted *supra*, follows the language of paragraph 360 of the 1922 Act, except that it does not include philosophical instruments.

The claim of the importer in the *Conover* case, *supra*, was that the seismographs should be classified under paragraph 372 of the 1922 Act as being included in the clause "all other machines or parts thereof, finished or unfinished, not specially provided for, 30 per centum ad valorem."

After reviewing the evidence and discussing different decisions cited in the briefs, the trial court held that, upon the record there presented, the articles were scientific instruments and dutiable as such under paragraph 360 of the 1922 Act and, accordingly, overruled the protest. On appeal, this court sustained the judgment of the trial court, and in the course of our decision it was said:

. It will be observed that the Congress deemed it necessary to enumerate drawing, surveying and mathematical instruments, which would indicate that it thought they would not be covered by the language "Philosophical, scientific, and laboratory instruments, apparatus, utensils," and "appliances." If drawing, surveying, and mathematical instruments are not included within the general terms of the paragraph it must be because those terms were intended to be limited to such instruments, etc., as were used in pure, rather than applied, science. Furthermore, if the term "scientific," as used in paragraph 218, *supra*, means of, pertaining to, or used in, science (and we so held in the *Hempstead [O. G. Hempstead & Son* v. *United States*, 16 Ct. Cust. Appls. 427, T. D. 43173] and *Chesterton [United States* y. *Chesterton Co. et al.*, 15 Ct. Cust. Appls. 175, T. D. 42232] cases, * * *), we can see no reason for giving the term "scientific," in paragraph 360, extended application. We are of opinion, therefore, that the term "scientific," in paragraph 360, was intended by the Congress to be limited, except as otherwise specially provided therein, to instruments, apparatus, utensils, and appliances used in pure, as distinguished from applied, science. This construction does not seem to be controverted by counsel for either party.

It was further said in our decision there:

* * * Surely, if the involved articles are not to be classified as scientific instruments, it must be shown, at least, that they are not devoted exclusively to matters

pertaining to pure science, but are successfully, not experimentally, and substantially used in ordinary commercial pursuits. Were these facts affirmatively shown by the record, we might reach a different conclusion. However, *on the record before us* we must hold that appellant has failed to make a case and that the judgment of the court below is correct. (Italics new here.)

A different situation was presented to the Customs Court in the unappealed *R. J. Saunders & Co.* case, *supra*, and that situation is before us for the first time in the instant case.

It also may be observed that the classification of "laboratory instruments" was not an issue in the *Conover* case, *supra*, in either the trial court or this court, and there was no occasion to consider the meaning of the term "laboratory" independently of the term "scientific" and it was not so considered by either. In the instant case that issue is squarely presented.

Another case relied upon by the trial court, which was cited in the unappealed *R. J. Saunders & Co.* case, *supra*, and cited again in the instant case, was that of *United States* v. *Adlanco Industrial Products Corp.*, 21 C. C. P. A. (Customs) 249, T. D. 46778.

An appeal to this court was taken by the Government in that case from the decision of the trial court, and the decision of this court, affirming that of the trial court, was written by the late Judge Lenroot. It appears that the merchandise there involved consisted of "certain articles known as thermoflux C and thermoflux 500." It was classified and assessed for duty at 40 per centum ad valorem under the provisions of paragraph 360 of the 1922 Tariff Act, and was claimed by the importer to be properly classifiable under paragraph 372 o fthat act. Importer there apparently relied upon the *Conover* case, *supra*, to *exclude* the merchandise from paragraph 360 of the 1922 Act.

In the course of this court's decision in the *Adlanco* case *supra*, we quoted the following from the trial court's decision:

There is no disagreement as to the material facts in this case. The imported merchandise consists of delicately adjusted machines constructed for the purpose of converting the electrical current supplied to the machines into a current of extremely high frequency. It is used by the medical profession and also by physiotherapists, who are specially trained persons working under the supervision of a physician and licensed under the laws of the State of New York. It seems that the machines are also used in hospitals and clinics in the orthopedic treatment and for the increase of blood circulation.

After so quoting, this court said:

The [Customs] court then proceeded to hold that the articles in question are not scientific instruments within the meaning of said paragraph 360, but are machines within the meaning of the language of paragraph 372 of said tariff act, and entered judgment accordingly, sustaining the protests of appellee. From such judgment this appeal is taken.

Both appellant and appellee rely upon our decision in *W. L. Conover* v. *United States*, 17 C. C. P. A. (Customs) 324, T. D. 43743, in support of their respective contentions, appellant contending that the articles are used in pure science, and appellee contending that they are not.

We are clear that the lower court was correct in holding that the articles in question are not used in pure science, but only for practical purposes in applied science. The evidence establishes that they are not used for laboratory purposes at all. In our opinion the undisputed evidence establishes that the articles here in question are not classifiable under paragraph 360, and we also agree with the lower court that they are dutiable under said paragraph 372, falling within the provision thereof for "all other machines and parts thereof."

Clearly the articles are "mechanical contrivances for utilizing, applying, or modifying energy or force", and are machines. * * *. Surely electricity is a form of energy, and the articles here in question convert the house current into a current of a different voltage and frequency in order that they may serve the purpose for which they are used.

In a reply brief filed before us on behalf of the Government in the instant case, it is said, in substance, that in its original brief and also in the brief of *amicus curiae*, both the *Conover* case, *supra*, and the *Adlanco* case, *supra*, were distinguished on their facts from the case at bar.

We quote the following from the brief of *amicus curiae:*

The *Conover* and *Adlanco* cases, *supra*, lay down the test of *pure* science vs. *applied* science for *scientific* instruments only; the *Adlanco* case also lays down the test of *use for laboratory purposes* for *laboratory* instruments under paragraph 360.

The *Conover* case, *supra*, involved seismographs which had been classified as *scientific* instruments under paragraph 360 of the Tariff Act of 1922. The record discloses, among other things, that said seismographs were used by oil companies for the purpose of locating geological structures that might contain oil, that they were smaller than those used for recording earth shocks, being deliberately constructed on a smaller scale so as to render them more mobile, and that one oil company had 24 such seismographs in operation and was actually drilling for oil on favorable geological structures located by said seismographs. The trial court (55 Treas. Dec. 673, T. D. 43353) held that such a seismograph was "unquestionably a scientific apparatus used by scientists." in the *"scientific* exploration of land," and the court sustained the classification under paragraph 360 as a *scientific* instrument. Conover appealed and this Court affirmed the judgment of the trial court on the ground that Conover had failed to make a case. In its opinion this court stated (p. 328):

* * * we are of opinion, therefore, that the term "scientific," in paragraph 360, was intended by the Congress to be limited, except as otherwise specially provided therein, to instruments, apparatus, utensils, and appliances used in pure as distinguished from applied, science. * * *

Both the issue in said case and the above-quoted language of the court clearly demonstrate that said decision was concerned only with the construction of the provision for *scientific* instruments and that the test, use in *pure*, as against *applied*, science, was limited to such instruments. This decision and the rule laid down by it can, therefore, have no bearing on the determination of the separate and distinct issue involving only *laboratory* instruments. Hence, the *Conover* case, *supra*, may not be invoked as a precedent in the determination of the issue now before the court.

The other case relied on by the trial court is *United States* v. *Adlanco Industrial Products Corp.*, *supra*. In said case certain articles, described as "thermoflux C" and "thermoflux 500" and used for the purpose of converting a given electric current into one of different voltage and frequency, were classified under paragraph 360, Tariff Act of 1922 as "philosophical, scientific, and laboratory apparatus and parts thereof, composed wholly or in chief value of metal."

The trial court held such articles to be excluded from the provision of *scientific* apparatus upon authority of the *Conover* case, *supra*, because such articles were used "for practical purposes in applied science." (No mention whatever was made by the trial court of the classification as *philosophical* apparatus or as *laboratory* apparatus—see 63 Treas. Dec. 362, T. D. 46200.) The Government thereupon filed an appeal and assigned as error the failure of the trial court to find that the articles involved were *scientific* apparatus and *laboratory* apparatus. Thus the case as presented to this Court involved two distinct issues:

1. Were the articles *scientific* apparatus
2. Were the articles *laboratory* apparatus

As to the first issue this Court clearly stated its conviction that the trial court was correct in holding that the articles could not be classified as *scientific* instruments because the record showed they were not used in *pure* science. It thus affirmed the trial court's conclusion as to the rule announced in the *Conover* case, *supra*, with respect to *scientific* instruments. Having disposed of that issue there remained for this court the further issue, raised by the assignments of error, namely, are the articles *laboratory* instruments? Obviously, if the *pure* science rule announced in the *Conover* case, *supra*, as a test for classification as a *scientific* instrument was to be extended to *laboratory* instruments this court in passing upon that second issue would clearly have indicated its intention to make such extension. But it expressed no such intention. On the contrary, it laid down an entirely different test for *laboratory* instruments and it embodied that test in the following language:

 \* \* \* The evidence establishes that they are not used for laboratory purposes at all. \* \* \*

That language makes inescapable the conclusion that this Court in determining whether or not an article is classifiable as a *laboratory* instrument requires evidence of use, *not* in pure science, but evidence of *use for laboratory purposes*.

Viewing the decision in the *Adlanco* case, *supra*, in the light of the issues raised by the assignment of errors therein it becomes manifest that this Court was declaring two separate and distinct tests for two separate and distinct provisions of paragraph 360, one test for *scientific* instruments, namely, the test of use in *pure* science, and the other for *laboratory* instruments, namely, the test of *use for laboratory purposes*.

From the foregoing these conclusions follow:

(1) The *Conover* case, *supra*, is not a valid precedent in the instant case because *scientific* instruments are not here involved, and
(2) The *Adlanco* case, *supra*, is a valid precedent in so far as it announced the test for *laboratory* instruments, as *use for laboratory purposes*.

These conclusions find support in *Arthur H. Thomas Co.* v. *United States*, 72 Treas. Dec. 203, 204, T. D. 49102, wherein the court stated:

 \* \* \* It will be observed that the two terms, scientific and laboratory, are separate and distinct, and involve two different classes of instruments. We are satisfied that the decision in *Conover* v. *United States, supra*, was intended to cover only the first class of instruments, to wit, *scientific* instruments, that is, such instruments as are used exclusively in pure, as distinguished from applied science. As we construe that decision the rule there enunciated was not intended to apply to the rest of the paragraph.

The brief of *amicus curiae* reviews at considerable length the legislative history and the pertinent judicial decisions incident to paragraph 360. As a background it is pointed out that the terms "scientific" and "philosophical," applying to instruments, first appeared in tariff statues in the act of 1870. The term "philosophical" was continued in different tariff acts through the act of 1922, but in the

latter act Congress for the first time inserted the term "laboratory." The *amicus* brief asserts, we think correctly, that by that action "Congress was thus adding a new group or class of articles to the other two classes therein provided for in paragraph 360, [viz.] *scientific* instruments and *philosophical* instruments, * * *."

The term "philosophical" was eliminated from paragraph 360 in the Tariff Act of 1930 and we deem the explanation given in the Conference Report as having great significance respecting legislative intent. The explanation reads (the italics being supplied by us):

Amendment No. 313: The Senate Amendment eliminates the term 'philosophical' as applied to instruments, apparatus, etc., as being no longer in commercial use, the intent being sufficiently covered by the words 'scientific and laboratory' and 'surveying and mathematical'; and the House recedes.

The following argumentative matter is taken from the brief of *amicus curiae:*

When H. R. 7456 was enacted into law as the Tariff Act of 1922, paragraph 360 thereof provided, *inter alia*, for *scientific* instruments and *laboratory* instruments. Manifestly the addition of the term *laboratory* was intended to extend the scope of paragraph 360 beyond the limits set by previous statutes which embraced only *scientific* instruments. In the *Conover* case, *supra*, this Court disposed of the issue as to what constituted *scientific* instruments by holding that only instruments employed in *pure*, as distinguished from *applied*, science could properly be classified as *scientific* instruments under paragraph 360. That decision of this Court was rendered in 1929 and the following year Congress gave legislative approval to this judicial construction by reenacting unchanged the provision for *scientific* instruments in paragraph 360, Tariff Act of 1930. See *Bentcamp* v. *United States*, 40 C. C. P. A. (Customs) 70, 79, C. A. D. 500, wherein this Court stated:

* * * There is a presumption of legislative ratification of judicial construction by a single legislative reenactment of an Act in the same language after an unappealed decision of the Customs Court. * * *

The term *scientific* having been thus judicially construed there remains for consideration only the question as to the meaning of the term *laboratory*. Manifestly it means something other than *scientific* has been declared to mean. To hold, as did the court below, that the scope of each term, *scientific* and *laboratory* must be determined by the same yardstick, namely, use in *pure* science, is the equivalent of holding that the two terms, in customs jurisprudence, are synonymous and that therefore Congress did a null and idle act when it added the term *laboratory* to the term *scientific* in paragraph 360. Such a conclusion, however, does violence to the fundamental rule that all parts of a statute must be given effect (*Ciba Co.* v. *United States*, 14 C. C. A. 309, T. D. 41913). Full effect is given to the term *laboratory* instruments when the test laid down in the *Adlanco* case, *supra*, is applied, namely, *use for laboratory purposes*. It was this test which the court applied in its ruling that a dental chair was *not a laboratory* instrument. (*United States* v. *Dyson Shipping Co.*, 27 C. C. P. A. (Customs) 260, C. A. D. 96). Emphasis quoted.

We are in accord with the foregoing views.

The merchandise involved in the *Conover* case, *supra*, was, of course, different from that involved in the *Adlanco* case, *supra;* and that involved in the instant case differs from that involved in either of those cases.

It is similar to that which was involved in the unappealed *R. J. Saunders & Co.* case, *supra*, and since it was similar to that case, it was quite natural for the trial court to follow in the instant case its reasoning in the former case.

We think, however, that it must be held that the trial court's decision in the unappealed *R. J. Saunders & Co.* case, *supra*, was erroneous and, hence, it did not furnish a proper ground for application of the rule of *stare decisis* in the instant case. The Government's contention there, in our opinion, should have been sustained, and the record in the instant case supports the Government's contention as to the facts even more strongly than did the record in the former case.

We have carefully examined the numerous cases cited in the brief for the importer in support of its reliance upon the *Conover* and *Adlanco* cases, *supra*, and we have studied the Government's reply to those deemed most pertinent. We think it preferable to quote what was said in the brief for the Government in this regard rather than to paraphrase it. The pertinent part reads:

> The doctrine of *stare decisis* rests on the underlying philosophy that any judicial statement, however broad, must be understood in its context, and as applying to the facts of the case. It is not to be expanded to embrace, as well, a factual situation other than, different from, and contrary to, the facts of the case to which the language applies and is used.

It is not intended by this decision to overrule the decisions in the *Conover* and *Adlanco* cases, *supra*, but to distinguish the instant case from them as to the facts.

The judgment of the United States Customs Court is *reversed* and the case will be *remanded* to it for further action not inconsistent with the foregoing decision.

JACKSON, J., retired, sat for COLE, J., who participated in the decision of the case below.