**In re SHEA & GOULD, Debtor.**

**Bankruptcy No. 95 B 45978 (JLG).**

United States Bankruptcy Court,
S.D. New York.

Oct. 24, 1997.

Anderson, Kill & Olick, P.C., New York City, for Ronald L. Durkin.

Jones, Day, Reavis & Pogue, New York City, for Debtor.

**741**

Togut, Segal & Segal, New York City, for Creditors' Committee.

Simpson, Thacher & Bartlett, New York City, for The Chase Manhattan Bank.

### DECISION ON MOTION OF RONALD L. DURKIN TO DISMISS CHAPTER 11 CASE

JAMES L. GARRITY, Jr., Bankruptcy Judge.

Ronald L. Durkin ("Durkin"), in his capacity as Trustee of the Benchmark Irrevocable Trust (the "Trust"), seeks an order pursuant to § 1112(b) of the Bankruptcy Code dismissing Shea & Gould's ("S & G" or "debtor") chapter 11 case. Debtor, the Official Committee of Unsecured Creditors (the "Committee") and The Chase Manhattan Bank, as successor in interest to Chemical Bank ("Chase"), oppose the motion. We deny it.

### Facts

The relevant facts are not in dispute. S & G is a New York partnership founded in 1964. Prepetition, it was engaged in the practice of law, with its principal office located in New York City and with offices also located in Washington, D.C., Albany, New York and Miami, Florida. As of January 1, 1994, S & G consisted of 71 partners, six of-counsel attorneys, 138 associates and 352 support staff personnel. On or about January 27, 1994, S & G's partners voted to dissolve the firm effective as of March 31, 1994 and adopted a dissolution plan (the "Dissolution Plan") which called for the winding up of the partnership in an orderly manner. That plan established a liquidation committee consisting of John B. Grant, Jr., James I. Hisiger, Peter C. Neger and Richard L. Spinogatti (the "Dissolution Committee") to oversee the winding up of S & G's affairs. The Dissolution Plan authorized members of the Dissolution Committee to take all actions necessary in connection with debtor's liquidation, including the filing of a petition for relief under the Bankruptcy Code. S & G continued its law practice for a short time after the dissolution vote, but only to avoid disruption in the handling of ongoing client matters and to facilitate a smooth transition of personnel to new law firms. On January 28, 1994, in part to satisfy the requirements of the WARN Act, 29 U.S.C. § 2101 et seq., debtor notified its employees that it intended to dissolve as of March 31, 1994. Notwithstanding S & G's attempts to wind up its affairs outside of court, creditors threatened it with involuntary bankruptcy. Accordingly, on December 22, 1995, S & G filed a petition under chapter 11 of the Bankruptcy Code.

In 1992, Durkin commenced litigation (the "California Litigation") against S & G and certain other defendants in the United States District Court for the Southern District of California, seeking more than $150 million on account of, among other things, S & G's alleged malpractice. S & G denies liability to Durkin and is defending that litigation. Durkin has filed a proof of claim based on claims he is asserting therein. After learning of the commencement of this case, Durkin unsuccessfully lobbied the Office of the United States Trustee to appoint him to the Committee or to an additional committee of malpractice claimants. In November 1996, he moved this court for orders directing the appointment of an official committee of malpractice claimants and for relief from the automatic stay to liquidate the Trust's claims in the California Litigation. In February 1997, Durkin withdrew his motion for the appointment of a separate committee. By order dated April 30, 1997, we granted Durkin stay relief to proceed to judgment in the California Litigation.

In support of its chapter 11 petition, S & G represents that it "intends to file a plan of liquidation under chapter 11 of the Bankruptcy Code." See Local Bankruptcy Rule 52 (now 1007–2) Affidavit ¶18. Accordingly, S & G is the latest in a succession of law firm or professional partnerships in this district utilizing chapter 11 to wind up its affairs and liquidate its assets. Each confirmed a liquidating chapter 11 plan. See In re Bower & Gardner, 94 B 44743(CB) (Bankr.S.D.N.Y.); In re Gaston & Snow, 91 B 14594(CB) (Bankr.S.D.N.Y.); In re Laventhol & Horwath, 90 B 13839(CB) (Bankr.S.D.N.Y.); In re Myerson & Kuhn, 89 B 13346(PBA) (Bankr.S.D.N.Y.); In re Finley. Kumble et al., 88 B 10377(PBA) (Bankr.S.D.N.Y.).

To date, approximately 260 proofs of claim have been filed against S & G, asserting claims exceeding $390 million. On April 22, 1996, debtor filed a Disclosure Statement pursuant to § 1125 of the Bankruptcy Code and Rule 3017 of the Federal Rules of Bankruptcy Procedure in connection with its Plan of Liquidation, dated and filed April 22, 1996. With the Committee's support, on or about May 27, 1997, S & G filed an Amended Disclosure Statement (the "Amended Disclosure Statement") and an Amended Plan of Liquidation (the "Amended Plan").

The Amended Plan calls for the payment (either in full or in part) of allowed claims against S & G from, among other sources: (i) cash on hand; (ii) the continued collection of receivables and work-in-progress retained by S & G under the Amended Plan; (iii) the pursuit of potential litigation claims and avoidance actions against third parties; and (iv) the liquidation of S & G's non-receivable assets. S & G intends to satisfy allowed malpractice claims from applicable malpractice insurance. The Amended Plan contemplates that the primary source of recoveries for uninsured, unsecured, recourse creditors will be contributions from S & G partners who voluntarily contribute to the funding of the Amended Plan and who, in consideration therefor, will benefit from a permanent injunction under § 105(a) of the Bankruptcy Code. It also provides that a Plan Administrator will be appointed to seek appropriate recoveries from partners who do not elect (or who default in their commitment) to voluntarily contribute under the Amended Plan.

### Discussion

We have subject matter jurisdiction of this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and the July 10, 1984 "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York (Ward, Acting C.J.). This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(A) and (O).

Under § 1112(b) of the Bankruptcy Code, we can dismiss or convert a chapter 11 case "for cause". See 11 U.S.C. § 1112(b). The statute lists ten non-exclusive bases for relief. *Id.;* [1] *see also C–TC 9th Avenue Partnership v. Norton Co. (In re C–TC 9th Avenue Partnership),* 113 F.3d 1304, 1311 & n. 5 (2d Cir.1997) *("In re C–TC ")* (bankruptcy court exercises its broad equitable discretion based on the particular facts and circumstances of a case in determining whether there is "cause" under § 1112(b) to dismiss a case).

Section 109(d) of the Bankruptcy Code governs who may be a debtor under chapter 11 of the Bankruptcy Code. In relevant part, it states that "[o]nly a person who may be a debtor under chapter 7 of [the Bankruptcy Code], except a stockbroker or a commodity broker, and a railroad may be a debtor under chapter 11 of [the Bankruptcy Code]." 11 U.S.C. § 109(d). With certain irrelevant exceptions, § 109(b) states that a "person" may be a debtor under chapter 7 of the Bankruptcy Code. 11 U.S.C. § 109(b).[2] For these

---

1. In relevant part, the statute provides that after notice and a hearing, the bankruptcy court may convert a case under [chapter 11] to a case under chapter 7 of this title or may dismiss a case under [chapter 11], whichever is in the best interests of creditors and the estate, for cause, including—
 (1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;
 (2) inability to effectuate a plan;
 (3) unreasonable delay by the debtor that is prejudicial to creditors;
 (4) failure to propose a plan under section 1121 of this title within any time fixed by the court;
 (5) denial of confirmation of every proposed plan and denial of a request made for additional time for filing another plan or a modification of a plan;

(6) revocation of an order of confirmation under section 1144 of this title, and denial of confirmation of another plan or a modified plan under section 1129 of this title;
(7) inability to effectuate substantial consummation of a confirmed plan;
(8) material default by the debtor with respect to a confirmed plan;
(9) termination of a plan by reason of the occurrence of a condition specified in the plan; or
(10) nonpayment of any fees or charges required under chapter 123 of title 28.
11 U.S.C. § 1112(b).

2. Section 109(b) states as follows:

 A person may be a debtor under chapter 7 of this title only if such person is not—
 (1) a railroad;

purposes, the term "person" includes a "partnership". *See* 11 U.S.C. § 101(41). Since the Bankruptcy Code does not define the term "partnership", we determine its meaning pursuant to applicable nonbankruptcy law. *In re C–TC*, 113 F.3d at 1307 (citing *Chicago Title & Trust Co. v. 4136 Wilcox Bldg. Corp.*, 302 U.S. 120, 128–29, 58 S.Ct. 125, 128–29, 82 L.Ed. 147 (1937)). In New York, a partnership is "an association of two or more persons to carry on as co-owners a business for profit and includes ... a registered limited liability partnership." N.Y. PARTNERSHIP LAW § 101 (McKinney 1997). Citing *In re C–TC*, Durkin contends that we must dismiss this case pursuant to § 1112(b) because debtor, as a New York partnership in dissolution, is not a "person" under § 101(41) and is therefore ineligible for relief under chapter 11.

Debtor, the Committee and Chase dispute Durkin's interpretation of *In re C–TC* and deny that it carries the weight of *stare decisis* and that it is binding on this court. They argue that we must deny Durkin's motion because, at a minimum, a partnership in dissolution can liquidate under chapter 11. Alternatively, they contend that if we determine that Durkin's reading of *In re C–TC* is correct, and that the decision carries the weight of *stare decisis,* we cannot give it retroactive effect because we will undo the myriad final orders entered to date herein. Finally, they contend that we should deny Durkin's motion as barred by laches.

■ We first review our court of appeals' decision in *In re C–TC.* There, the debtor ("C–TC") was a New York partnership in dissolution, whose sole asset was Cloverleaf Distribution Center ("Cloverleaf"), a 21–acre warehouse complex. When C–TC commenced its case, Cloverleaf was the subject of a prepetition judgment of foreclosure in favor of Norton Company ("Norton"), C–TC's largest creditor and only secured creditor. 113 F.3d at 1307. The partnership was in forced dissolution because one of its two

partners had withdrawn before C–TC filed its chapter 11 petition. *Id.*

C–TC was formed to acquire Cloverleaf. Prepetition, C–TC executed an agreement with Norton (then Cloverleaf's owner) to purchase Cloverleaf and then lease approximately one-half of the property back to Norton. The agreement obligated C–TC to pay $25,000 in cash upon signing and another $850,000 in cash at closing, and to execute a $2,850,000 note secured by a mortgage on Cloverleaf. *Id.* at 1306–07. C–TC executed the note and mortgage but for various reasons, it failed to make any of the required payments. Norton brought two actions against C–TC. The first alleged that C–TC breached its obligations under the note by failing to make the cash payments, and the second sought foreclosure of the mortgage on Cloverleaf due to C–TC's breach of its obligations under the note and mortgage. *Id.* at 1307. C–TC counterclaimed in the foreclosure action, alleging breach of the purchase agreement and fraud. The state court severed the counterclaims from the foreclosure action. The court granted Norton summary judgment foreclosing the mortgage, and appointed a receiver for Cloverleaf. That day, C–TC filed its chapter 11 petition, thereby staying the state court proceedings. *Id.* Among other things, Norton moved to dismiss C–TC's chapter 11 case.

In its bankruptcy petition, and during the 13 months that its chapter 11 case was pending, C–TC held itself out as a reorganizable entity, notwithstanding that it (i) did not qualify as a partnership under state law since it only had one partner, (ii) had no employees or pre or postpetition operations, (iii) failed to pay postpetition property and other taxes, and (iv) never filed a reorganization plan and likely could not have confirmed one over Norton's objection. *Id.* at 1307, 1311–12.

The court of appeals found that C–TC's sole asset was Cloverleaf, that it had few unsecured creditors and their claims were

(2) a domestic insurance company, bank, savings bank, cooperative bank, savings and loan association, building and loan association, homestead association, a small business investment company ..., credit union, or industrial bank or similar institution ...; or

(3) a foreign insurance company, bank, savings bank, cooperative bank, savings and loan association, building and loan association, homestead association, or credit union, engaged in such business in the United States. 11 U.S.C. § 109(b).

small in relation to Norton's, that C–TC's financial problems related solely to its dispute with Norton, that the dispute could have been resolved in state court and that C–TC filed its petition as a litigation tactic to delay and frustrate Norton's legitimate efforts to enforce its rights with respect to Cloverleaf. *Id.* at 1311–12. Accordingly, the court agreed with the bankruptcy court that the case should be dismissed pursuant to § 1112(b) of the Bankruptcy Code as a bad faith chapter 11 filing. *Id.* at 1312. The court of appeals also affirmed the bankruptcy court's alternative basis for dismissing the case. It found that because a New York partnership in dissolution like C–TC is relieved of its responsibilities, duties and powers except as necessary to complete transactions unfinished at dissolution, *id.* at 1309 (citing N.Y. PARTNERSHIP LAW § 66(1)(a) (McKinney 1996)), it cannot reorganize. *Id.* Therefore, it "conclude[d] that a partnership in dissolution [C–TC] is not a 'person' eligible to avail itself of reorganization under Chapter 11." *Id.*

*Boston Post Road Ltd. Partnership v. Federal Deposit Insurance Corp. (In re Boston Post Road Ltd., Partnership)*, 21 F.3d 477 (2d Cir.1994), *cert. denied*, 513 U.S. 1109, 115 S.Ct. 897, 130 L.Ed.2d 782 (1995), is a single asset real estate case in which the court of appeals rejected a debtor's attempt to separately classify the deficiency claim of its largest creditor, an undersecured lender. Had the court approved the classification scheme, the debtor effectively would have disenfranchised the lender and been able to cramdown its reorganization plan over the lender's objection. The court found that the debtor could not offer any legitimate reason its for classification scheme and held that, as such, the debtor should not be permitted to cramdown the plan which was designed to disadvantage its overwhelmingly largest creditor. *Id.* at 483. *In re C–TC* is consistent with *Boston Post Road* because it furthers the court of appeals' view that in single asset real estate cases, debtors cannot manipulate the Bankruptcy Code to thwart the legitimate rights of secured creditors to realize on their claims. As we explain, none of those concerns is present in this case.

■ The doctrine of *stare decisis* mandates that we follow a decision of our court of appeals until it is overruled, provided it is "on all fours" with the matter before us. 18 MOORE'S FEDERAL PRACTICE § 134.02[2] at 134–19, 134–28 (3d ed.1997); *see also United States v. R.J. Saunders & Co.*, 42 C.C.P.A. 128, 136, 1955 WL 6848 (1955) ("The doctrine of stare decisis rests on the underlying philosophy that any judicial statement, however, broad, must be understood in its context, and as applying to the facts of the case. It is not to be expanded to embrace, as well, a factual situation other than, different from, and contrary to, the facts of the case to which the language applies and is used").

*In re C–TC* is plainly not "on all fours" with this case. S & G did not commence this case in response to an adverse state court judgment or to delay the enforcement of legitimate claims against it. It filed the case in response to threatened involuntary bankruptcy, after its failed attempt to wind up its affairs outside of court. This is not a single asset real estate case where the debtor has few creditors other than an undersecured lender. S & G has substantial liabilities spread among approximately 260 creditors and assets consisting of work in process, accounts receivables, non-receivable assets and avoidance causes of action. With the Committee's support, S & G has filed its Amended Plan and Amended Disclosure Statement. Only this motion has delayed our consideration of debtor's motion pursuant to § 1125 of the Bankruptcy Code for an order approving the Amended Disclosure Statement. Under the standard enunciated in *In re C–TC*, S & G plainly did not file this chapter 11 case in bad faith, and Durkin does not contend otherwise. Furthermore, the C–TC court's determination that a partnership in dissolution is not a person eligible to reorganize under chapter 11 does not mandate that we dismiss this case. Unlike C–TC, debtor has never represented that it will reorganize under chapter 11. It filed this chapter 11 case to wind up it affairs and liquidate its assets—not to reorganize them.

Still, Durkin contends that we must dismiss this liquidating chapter 11 case because under *In re C–TC*, S & G is ineligible to be a

chapter 11 debtor. For Durkin, the determinative factor, and what makes *In re C–TC* "on all fours" with this case, is that debtor, like C–TC, is a partnership in dissolution. He maintains that the fact that this is a liquidating chapter 11, as opposed to a chapter 11 reorganization, is irrelevant because the *C–TC* court found that a partnership in dissolution is not a "person" eligible to file for chapter 11 regardless of the purpose of the filing.

We disagree with Durkin that *In re C–TC* holds that a partnership in dissolution cannot liquidate under chapter 11. As noted, throughout the life of its case C–TC held itself out as an entity seeking to reorganize in chapter 11. After unsuccessfully defending Norton's motion to dismiss in the bankruptcy court and failing to persuade the district court on appeal to reverse the bankruptcy court, C–TC retained new counsel. Among other things, he argued to the court of appeals that even if C–TC could not reorganize, it was eligible for chapter 11 relief because the Bankruptcy Code permits a debtor to liquidate under chapter 11. 113 F.3d at 1309. The court rejected that argument finding that C–TC had waived it by failing to raise it in the district court and consistently arguing below that it intended to reorganize. *Id.* Notwithstanding the court's clear determination that C–TC had waived its right to contend that it could liquidate in chapter 11, the court added

[i]n any event, while a debtor may conclude Chapter 11 proceedings by liquidating and may even enter them with an intent to liquidate if necessary, there is no reason a debtor should be permitted to enter these proceedings without a possibility of reorganization. C–TC has not claimed that there was (or is) any possibility of reorganization here. Hence, although the issue is waived, we believe that it is, in any event, without merit.

*Id.*

The doctrine of *stare decisis* "is limited to actual determinations in respect to litigated and necessarily decided questions" *Warner Bros., Inc. v. Dae Rim Trading, Inc.,* 877 F.2d 1120, 1128 (2d Cir.1989) (citing *United States v. Furey,* 491 F.Supp. 1048,

1069 (E.D.Pa.), *aff'd,* 636 F.2d 1211 (3d Cir. 1980), *cert. denied,* 451 U.S. 913, 101 S.Ct. 1987, 68 L.Ed.2d 304 (1981)). Given the court's unequivocal determination that C–TC waived its right to argue that the Bankruptcy Code permits liquidating chapter 11 cases, we view the court's comments regarding a partnership liquidating under chapter 11 as dictum. *See Hormel Foods Corp. v. Henson Productions, Inc.,* 73 F.3d 497, 508 (2d Cir. 1996) ("Dictum generally refers to an observation which appears in the opinion of a court which was 'unnecessary to the disposition of the case before it.'") (quoting 1B MOORE'S FEDERAL PRACTICE ¶ 0.402[2] at 40 (2d ed.1984)). We are not bound by those statements. *See Kokkonen v. Guardian Life Insurance Co. of America,* 511 U.S. 375, 379, 114 S.Ct. 1673, 1676, 128 L.Ed.2d 391 (1994) ("it is to the holdings of our cases, rather than their dicta, to which we must attend"). For that reason, we do not read the court's conclusion that a "dissolved New York partnership is not a 'person' for purposes of Chapter 11 and therefore cannot pursue a filing under Chapter 11", 113 F.3d at 1313, as barring a New York partnership from liquidating in chapter 11.

Durkin insists that even if that portion of the court's decision is dictum, it nevertheless is persuasive authority, and that if faced with the issue, our court of appeals will find that a New York partnership in dissolution is ineligible to wind up its affairs and liquidate its assets under chapter 11. However justified the court was in finding that C–TC could not reorganize under chapter 11, we do not think that the court would bar S & G from liquidating thereunder. Under New York law, *see* N.Y. PARTNERSHIP LAW § 62(5) (McKinney 1997), and the laws of most states, *see* UNIFORM PARTNERSHIP ACT § 31, a bankruptcy filing by a partnership or one of its partners causes the partnership to dissolve. Thus, if a "partnership in dissolution" could neither liquidate nor reorganize under chapter 11, partnerships would be foreclosed from filing chapter 11 cases. We do not believe that our court of appeals would reach that conclusion. It flies in the face of the statute which authorizes a partnership to be a chapter 11 debtor, *see* 11 U.S.C. §§ 101(41), 109, permits the

filing of involuntary chapter 11 cases against partnerships in dissolution, *see id.* § 303[3], and sanctions liquidating chapter 11 plans. *Id.* § 1123(b)(4) ("a plan may ... provide for the sale of all or substantially all of the property of the estate, and the distribution of the proceeds of such sale among holders of claims or interests"); *see also Bartel v. Bar Harbor Airways, Inc.,* 196 B.R. 268, 273 (S.D.N.Y.1996) ("Section 1123(b)(4) provides for ... a liquidating plan"); *Abel v. Shugrue (In re Ionosphere Clubs, Inc.),* 184 B.R. 648, 654 (S.D.N.Y.1995) (same); *In re Sandy Ridge Dev. Corp.,* 881 F.2d 1346, 1352 (5th Cir.) (same); *reh'g denied,* 881 F.2d 1346 (5th Cir.1989). Moreover, to reach that conclusion, the court would have to disregard settled principles of statutory construction which prohibit courts from engrafting conditions or limitations on otherwise unqualified provisions of the Bankruptcy Code. *See Toibb v. Radloff,* 501 U.S. 157, 160, 111 S.Ct. 2197, 2199, 115 L.Ed.2d 145 (1991) (court cannot limit right to relief under chapter 11 to businesses where § 109(d), by its terms, does not limit eligibility for chapter 11 to businesses); *Taylor v. Freeland & Kronz,* 503 U.S. 638, 643–44, 112 S.Ct. 1644, 1648, 118 L.Ed.2d 280 (1992) (court cannot engraft good faith limitation onto § 522(*l*) and limit application of that section to exemptions claimed by a debtor in good faith). We do not believe that it would do so.

Finally, we think that there is case law in this circuit which supports the notion that a partnership in dissolution can liquidate in chapter 11. In *New Haven Radio, Inc. v. Meister (In re Martin–Trigona),* 760 F.2d 1334 (2d Cir.1985), the court held that a Connecticut corporation ("New Haven Radio") dissolved by the secretary of state pursuant to Conn. Gen. Statute § 33–387 could wind up its affairs and liquidate its assets under chapter 11 of the Bankruptcy Code. Prepetition, New Haven Radio was dissolved

by forfeiture by the secretary of state and was never reinstated. *Id.* at 1336. Nonetheless, the case was administered under chapter 11 and New Haven Radio confirmed a liquidating chapter 11 plan. *Id.* at 1338. In accordance with the confirmed plan, and pursuant to court order, the debtor sold its assets. *Id.* at 1339. Its sole shareholder and president, Anthony Martin–Trigona, objected to the sale and the order contending, among other things, that the court lacked subject matter jurisdiction over the debtor's bankruptcy case because New Haven Radio, as a dissolved corporation, lacked capacity to file a voluntary bankruptcy petition. *Id.* at 1342. He argued that because the debtor did not exist at the time of the filing, all of the proceedings before the bankruptcy court were a nullity. *Id.* After noting that Martin–Trigona's objection was more properly directed toward the personal, rather than subject matter jurisdiction of the bankruptcy court, *id.* at 1340, the court of appeals rejected his argument. In doing so, it found that under Connecticut law, as a corporation in dissolution, New Haven Radio had two options. Either it could seek reinstatement within three years of the forfeiture and, if successful, the reinstatement would be effective *nunc pro tunc* to the date of the forfeiture, or it could liquidate and wind up its affairs. *Id.* at 1342. The court found that rather than winding up its corporate affairs under state law, New Haven Radio sought the added protections of chapter 11 of the Bankruptcy Code. *Id.* After finding that nothing in the Connecticut statute prohibited New Haven Radio from winding up its affairs in chapter 11, *id,* the court concluded as follows:

> To deny New Haven Radio, Inc. the benefits of reorganization or liquidation under the federal bankruptcy law would be contrary to the central purpose of the federal code. On the other hand, carrying out the

---

**3.** In relevant part, § 303 permits the filing of an involuntary case "under chapter 7 or 11 ... if such person is a partnership ... by fewer than all of the general partners in such partnership." 11 U.S.C. § 303(b)(3)(A). Moreover, it expressly contemplates that an involuntary chapter 11 case may be filed against a dissolved partnership since § 303 permits a general partner, its trustee or a partnership creditor to file a chapter 7 or 11 case against the partnership if "all of the general partners in such partnership" have filed for bankruptcy, *id.* § 303(b)(3)(B), and, as noted, the filing of a bankruptcy petition against one of the partners in a partnership results in dissolution of the partnership under non-bankruptcy law. *See* N.Y. PARTNERSHIP LAW § 62(5) (McKinney 1997); UNIFORM PARTNERSHIP ACT § 31.

liquidation of New Haven Radio, Inc. under the federal code is fully consistent with the plan and purpose of the Connecticut statute authorizing dissolution by forfeiture. In short, on this point, we hold that the filing by the Secretary of State of a certificate of forfeiture which effected the dissolution of the debtor corporation on May 30, 1980, did not deprive the bankruptcy court of jurisdiction over the voluntary Chapter 11 reorganization proceeding filed in September 1980.

*Id.* at 1342–43.

In *Cedar Tide Corp. v. Chandler's Cove Inn, Ltd. (In re Cedar Tide Corp.)*, 859 F.2d 1127, 1132–33 (2d Cir.1988), the court reaffirmed the rationale it articulated in *Martin–Trigona* in holding that a New York corporation dissolved for failing to pay franchise taxes was eligible to file a chapter 11 case. In that case, the debtor-corporation had been dissolved prior to filing its petition because it failed to pay franchise taxes under § 203–a of the N.Y. Tax Law, but was reinstated during the pendency of the case. A defendant in an adversary proceeding commenced by the debtor moved to dismiss the proceeding, arguing that because the debtor was a dissolved corporation at the time it filed its petition, the bankruptcy court lacked subject matter jurisdiction over the case. *Id.* at 1131. Again emphasizing that "such an attack is more properly described as directed against the personal, rather than subject matter, jurisdiction of the bankruptcy court", *id.* at 1131 n. 3, the court of appeals concluded that the bankruptcy court did have jurisdiction because New York law, like Connecticut law, permits a corporation dissolved for failure to pay franchise taxes to be reinstated *nunc pro tunc* pursuant to § 203–a(7) of the N.Y. Tax Law, and if not reinstated, a dissolved New York corporation continues to have a cognizable legal existence for the limited purpose of winding up its business affairs and liquidating its assets. *Id.* at 1132. Moreover, as under Connecticut law, New York law did not preclude a dissolved corporation from choosing to conduct its winding up in the bankruptcy court. *Id.* at 1133.

In *In re C–TC*, the court of appeals cited *Cedar Tide* in making the point that while a New York corporation in dissolution can be reorganized in chapter 11 provided it is reinstated, a partnership in dissolution cannot be reinstated and thus, cannot be reorganized in chapter 11. *See* 113 F.3d at 1309. That aspect of *Cedar Tide* is not applicable because S & G is seeking to liquidate under chapter 11. The importance of *Cedar Tide* here is that it affirms the court's rationale in *Martin–Trigona.*

■ Contrary to Durkin's assertion, a New York partnership does not cease to exist when it dissolves. Rather, it continues to exist to the extent necessary to wind up partnership affairs. N.Y. PARTNERSHIP LAW, § 64 (McKinney 1997); *see also id.* § 60 (distinguishing between dissolution of partnership and winding up of partnership's business). The attributes of a corporation in dissolution under New York law are substantially identical to those of a New York partnership in dissolution, except that a partnership cannot be reinstated. Significantly, under both corporation and partnership law, the dissolved entity has a cognizable legal existence for the purpose of winding up its affairs. *See* N.Y. PARTNERSHIP LAW § 60 (McKinney 1997), N.Y. BUS. CORP. LAW §§ 1005, 1006 (McKinney 1997). Moreover, as with New York corporations, nothing in the New York partnership laws prohibits a partnership in dissolution from conducting its winding up proceedings under the Bankruptcy Code. *Martin–Trigona* permitted a corporation in dissolution to wind up its affairs and liquidate its assets pursuant to a liquidating chapter 11 plan. We do not read the opinion as making the fact that the corporate debtor had the option under state law to seek reinstatement and then reorganize relevant to the court's decision to permit the debtor to wind up its affairs pursuant to a liquidating chapter 11 plan. Given the substantial similarities between New York partnership and New York corporation law, and the plain language of the Bankruptcy Code, we believe that our court of appeals would permit S & G to wind up its affairs and liquidate its assets pursuant to a liquidating chapter 11 plan.

Durkin misplaces his reliance on *In re Fitzgerald Group*, 38 B.R. 16 (Bankr. S.D.N.Y.1983), as support for the proposition that a dissolved New York partnership cannot file a chapter 11 case. In *Fitzgerald*, the debtor was a partnership in dissolution due to the death of one of debtor's two partners. *Id.* at 17. The United States Trustee moved pursuant to § 305 of the Bankruptcy Code to dismiss the case. *Id.* The debtor had no business to reorganize, a single asset—a typewriter valued at $2,500—and nine general unsecured creditors with claims aggregating $23,000. *Id.* Postpetition the debtor failed to file any operating statements, a reorganization plan or disclosure statement. No creditor opposed the motion. *Id.* The court granted the motion finding that the interests of creditors and the debtor would be better served if the partnership was wound up in state court. *Id.* at 18. The court did not find that the debtor was ineligible to be a chapter 11 debtor, and we do not construe it as authority for that proposition. We note that the court in *In re C–TC* cited *Fitzgerald* as support for the proposition that a partnership in dissolution cannot reorganize. 113 F.3d at 1308. However, as noted, S & G is not attempting to reorganize. We believe that *Cedar Tide* and *Martin–Trigona* (which post-date *Fitzgerald*) confirm that a debtor can liquidate or reorganize under chapter 11. *See In re Cedar Tide Corp.*, 859 F.2d at 1132; *In re Martin–Trigona*, 760 F.2d at 1342; *see also Toibb v. Radloff* 501 U.S. at 163, 111 S.Ct. at 2201 (chapter 11 is not limited to business debtors seeking to reorganize and restructure their debts, but "also embodies the general Code policy of maximizing the value of the bankruptcy estate").

■ As a general rule, we must apply the law in effect when we render our decision. *See Scelsa v. City University of New York*, 76 F.3d 37 (2d Cir.1996). However, new legal principles, even when applied retroactively, do not apply to cases already closed by final orders, or to matters that are not "still open on direct review". *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 758, 115 S.Ct. 1745, 1751, 131 L.Ed.2d 820 (1995); *Harper v. Virginia Department of Taxation*, 509 U.S. 86, 97, 113 S.Ct. 2510, 2517, 125 L.Ed.2d 74 (1993). For these purposes, a final order is "one that ends litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. U.S.*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945) (citing *St. Louis I.M. & S.R.R. v. Southern Express Co.*, 108 U.S. 24, 28, 2 S.Ct. 6, 8, 27 L.Ed. 638 (1883)); *see also Dubin v. S.E.C. (In re Johns–Manville Corp.)*, 824 F.2d 176, 179–80 (2d Cir.1987) (final order fully and finally resolves dispute); *Royal Bank & Trust Co. v. Pereira (In re Lady Madonna Industries, Inc.)*, 76 B.R. 281, 284 (S.D.N.Y.1987) (same)

■ S & G argues that if, as Durkin contends, *In re C–TC* promulgates a new rule of law in this circuit regarding a partnership's eligibility for chapter 11 relief, we cannot apply it retroactively to somehow undo the myriad final orders entered in this chapter 11 case, including, most importantly, the order for relief issued on December 22, 1995 and not questioned until now. Given our reading of *In re C–TC*, we need not address this issue. However, in the exercise of judicial economy, and to provide a complete record for any reviewing court, we consider and reject the argument.

S & G contends that the Bankruptcy Code treats the order for relief as a judgment in *rem* that fixes the parties' rights to estate property as of the time the debtor files its bankruptcy petition. *See* 2 COLLIER ON BANKRUPTCY ¶ 301.07 at p. 301–14–15 (15th ed. rev.1997). Since the order for relief has never been appealed or reconsidered, S & G argues that it is a final order impervious to any retroactive impact of *In re C–TC*. An order for relief in a voluntary bankruptcy case is entered automatically under § 301 of the Bankruptcy Code. *See* 11 U.S.C. § 301. It initiates the bankruptcy process. The entry of an order for relief does not determine a debtor's eligibility to be a debtor under the Bankruptcy Code, or any other substantive legal matter. It does not end litigation on the merits. As such, it is not "final" for purposes of application of the doctrine of retroactivity. Moreover, Durkin is not attempting to invalidate or otherwise vacate a particular final order. Thus, if *In re C–TC*

promulgates a new rule in this circuit which makes S & G ineligible for chapter 11 relief, we believe it can be applied retroactively herein.

■■■ Laches is "an equitable defense based on the ... maxim vigilantibus non dormientibus aequitas subvenit (equity aids the vigilant, not those who sleep on their rights)." *Ivani Contracting Corp. v. City of New York*, 103 F.3d 257, 260 (2d. Cir.) (citations omitted), *cert. denied*, —— U.S. ——, 117 S.Ct. 1695, 137 L.Ed.2d 821 (1997). It bars relief when the movant is "guilty of unreasonable and inexcusable delay that has resulted in prejudice to the [respondent]." *Id.* (quoting *Goodman v. McDonnell Douglas Corp*, 606 F.2d 800, 804 (8th Cir.1979), *cert. denied*, 446 U.S. 913, 100 S.Ct. 1844, 64 L.Ed.2d 267 (1980), and citing *Gardner v. Panama R.R. Co.*, 342 U.S. 29, 30–31, 72 S.Ct. 12, 13–14, 96 L.Ed. 31 (1951)); *see also In re Tishler*, 201 B.R. 608, 613 (Bankr. D.Conn.1996) ("[a] claim of laches requires the court to examine the equitable circumstances peculiar to each case to determine whether the plaintiff in asserting her rights was guilty of unreasonable delay that prejudiced the defendants"). Durkin concedes that § 109 does not implicate our subject matter jurisdiction.

■■■ As a general rule, "when a plaintiff brings a federal statutory claim seeking legal relief, laches cannot bar that claim, at least where the statute contains an express limitations period within which the action is timely." *Id.* Because § 1112(b) contains no express limitations period, courts exercise their equitable discretion to deny a § 1112(b) motion as untimely based in whole or in part on the doctrine of laches. *See Peterson v. Atlas Supply Corp. (In re Atlas Supply Corp.)*, 857 F.2d 1061, 1063 (5th Cir.1988) (bankruptcy court did not abuse its discretion in concluding that by waiting more than one year before moving to dismiss chapter 7 case, deceased shareholder's representative "forewent her right to complain that the bankruptcy petition was not authorized by the corporation"); *Alexander v. Farmers' Supply Co. (In re Farmers' Supply Co.)*, 275 F. 824, 826 (5th Cir.1921) ("if [the minority shareholder] had the right to defeat the vol-

untary petition in bankruptcy filed in the name of the [debtor] because there was no corporate action authorizing the institution of the proceeding, he lost that right by his [4 month] silence and inaction"); *In re I.D. Craig Service Corp.*, 118 B.R. 335, 337 (Bankr.W.D.Pa.1990) (where board of directors waited more than one year before objecting to president's lack of authority in filing chapter 11 case that was later converted to chapter 7, and where board members actively participated in numerous proceedings during case, including adoption of corporate resolution to retain counsel, their motion to dismiss case was barred by doctrine of laches); *see also In re Giggles Restaurant, Inc.*, 103 B.R. 549, 554 (D.N.J.1989) (rejecting laches as a basis for denying landlord's motion to dismiss chapter 11 case on basis that filing of petition not properly authorized where six month delay between petition date and filing of motion was reasonable because factual basis for dismissal was disclosed in recently-completed discovery in related proceeding).

■■■ Durkin filed this motion approximately 19 months after S & G commenced this case. He denies that he is guilty of laches and argues that his motion is timely since he moved promptly after the court of appeals issued its *In re C–TC* decision. It is undisputed that Durkin brought *In re C–TC* to the court's attention seven days after the court of appeals issued its decision and that he filed his motion approximately one month later. If *In re C–TC* states a new legal principle in this circuit regarding the eligibility of a dissolved partnership to file a liquidating chapter 11 case, laches cannot bar Durkin's motion since he promptly moved for relief after the court of appeals issued its opinion. However, if, as we have found, the case does not state such a new legal principle, the doctrine of laches precludes Durkin's motion.

■■■ Whether a partnership in dissolution is eligible for chapter 11 relief has been an issue in this district since at least 1983. *See In re Fitzgerald Group*, 38 B.R. at 17–18. Further, the bankruptcy court issued its decision in *In re C–TC* approximately six

months *before* S & G filed for chapter 11. *See In re C–TC 9th Avenue Partnership,* 193 B.R. 650 (Bankr.N.D.N.Y.1995), *aff'd,* 196 B.R. 666 (N.D.N.Y.1996), *aff'd,* 113 F.3d 1304 (2d Cir.1997). In addition, *In re Donald Verona & Bernard Green,* 126 B.R. 113 (Bankr.M.D.Fla.1991), predates the commencement of this case by approximately four years. The court in that case held that based on the language of the Bankruptcy Code and legislative history "dissolution did not destroy the legal evidence of a partnership, and it will remain an eligible chapter 7 debtor until its affairs are wound up." *Id.* at 116; *see also In re Washington, Perito & Dubuc,* 154 B.R. 853, 859, n. 7 (Bankr. S.D.N.Y.1993) (chapter 11 partnership debtor's existence continues during its efforts to wind down its affairs).

Durkin could have advanced the same legal arguments he is making now 19 months ago when debtor filed this case. Rather, he embraced the chapter 11 process and now, when debtor is seeking approval of its Amended Disclosure Statement in anticipation of presenting its Amended Plan to its creditors, he is attempting to manipulate the Bankruptcy Code to the detriment of other similarly situated creditors. There is prejudice to the estate and creditors. Debtor has expended time and money in dealing with the administration of its case and, particularly, in negotiating the Amended Plan with interested parties. All of that will be lost if we dismiss the case. Creditors will suffer additional prejudice because they will be forced to initiate or reinitiate potentially time consuming and expensive litigation to liquidate and satisfy their claims. If granted, the relief Durkin has unjustifiably waited 19 months to seek would result in a "race to the courthouse" and the inequitable distribution, if any, among like creditors. That is precisely what the Bankruptcy Code seeks to prevent.

Chase contends that it will be severely prejudiced if we dismiss this case. Chase was S & G's pre-bankruptcy lender and pursuant to a series of stipulations so ordered by this court initially on April 23, 1996 and most recently on October 14, 1997 (collectively, the "Cash Collateral Stipulations"), it has agreed to permit the use of its cash collateral to fund administrative and other expenses herein. As security for amounts advanced by Chase under its pre-petition loan agreement, S & G granted to Chase a security interest in substantially all of its assets, including receivables, work in progress and any proceeds thereof. Because the proceeds of that collateral constituted Chase's "cash collateral" when S & G filed its chapter 11 petition, there was no source of working capital to fund the orderly liquidation contemplated by S & G when it filed. Pursuant to the Cash Collateral Stipulations, Chase agreed to provide that funding, in exchange for which it received, among other things, partial adequate protection in the form of a superpriority administrative expense claim, to the extent that S & G expends more than $400,000 of Chase's cash collateral, and a replacement lien on any avoidance recoveries. As of July 31, 1997, S & G had utilized approximately $630,000 of Chase's cash collateral. Chase also agreed to assume responsibility for paying the law firm retained to collect S & G's receivables, and to the use of its cash collateral to fund a $125,000 settlement among S & G, its landlords and Chase.

 The effect of a dismissal of a case is "to place the parties in the same position that they were in before the bankruptcy petition was filed." 7 COLLIER ON BANKRUPTCY ¶ 1112.09 at p. 1112–78 (15th ed. rev.1997). Pursuant to § 349 of the Bankruptcy Code, the only orders vacated upon dismissal of a case are those avoiding a transfer or recovering a setoff. 11 U.S.C. § 349(b)(2). The Bankruptcy Code affords us considerable discretion "to make whatever orders may be necessary and appropriate to protect rights acquired in reliance on the title 11 case." 3 COLLIER ON BANKRUPTCY ¶ 349.03[2] at p. 349–12 (15th ed. rev.1997). However, upon dismissal of a case, we cannot restore prepetition property rights where estate property has been distributed to third parties. *See In re Searles,* 70 B.R. 266, 270 (D.R.I.1987); *see also* 3 COLLIER ON BANKRUPTCY ¶ 349.03[2] at p. 349–12 (15th ed. rev.1997). If we dismiss the case, Chase cannot recover the cash collateral that S & G has distributed to third parties and its lien on avoidance recoveries would be rendered valueless. Thus, Chase plainly will be prejudiced if the case is dis-

missed. However, Chase expressly assumed that risk when it agreed to permit S & G to use its cash collateral. In relevant part, the Cash Collateral Stipulations state that dismissal of the case is an event of termination and that Chase shall be permitted to take any action or exercise any right or remedy permitted to it under its loan agreement with S & G, the Cash Collateral Stipulations or applicable law. Cash Collateral Stipulations ¶¶ 11–12. The stipulations further provide that their provisions, including the claims, liens and priorities conferred therein, shall survive the entry of any order dismissing the case. *Id.* ¶ 14. Thus, Chase clearly contemplated and assumed the risk that the case might be dismissed for whatever reason when it consented to the use of its cash collateral. We do not believe that the prejudice Chase will suffer if this case is dismissed is sufficient alone to bar Durkin's motion. However, we find that it is relevant to and supports our determination that the doctrine of laches bars Durkin's motion.

### Conclusion

We deny Durkin's motion.

SETTLE ORDER.